**Ramon REYES, Appellant,**

v.

**STORAGE & PROCESSORS, INC. and Leonel Guerrero, Appellees.**

No. 04–98–00334–CV.

Court of Appeals of Texas,
San Antonio.

April 21, 1999.

Jerry A. Pusch, Pusch, Lowery & Gilcrease, Houston, for appellant.

Randall L. Brim, Stewart A. Feldman & Associates, L.L.P., Robert H. Singleton, Jr., Serena A. Strong, Singleton & Cooksey, P.C., Houston, for appellee.

Before PHIL HARDBERGER, Chief Justice, CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice.

## OPINION

Opinion by: SARAH B. DUNCAN, Justice.

This appeal questions the enforceability of an agreement by which an employee of a non-subscriber waives his claims arising out of a workplace injury in exchange for certain but far more limited benefits than those provided by workers' compensation insurance. We hold the waiver violates the public policy expressed by the Texas Legislature in the Texas Workers Compensation Act and is therefore void and unenforceable.

### FACTUAL AND PROCEDURAL BACKGROUND

Shortly after Ramon Reyes was hired by Storage and Processors, Inc. as a forklift operator, he enrolled in S & P's Occupational Accident. Employee Welfare Benefit Plan. Reyes thus signed a document, written in Spanish, stating he had read and understood the rules and stipulations of the S & P Plan and, four days later, he signed the S & P Plan agreement, which states in relevant part:

This company does not have workers' compensation insurance coverage to protect you from damages because of work-related illness or injury. However, we do have an Occupational Accident Employee Welfare Benefit Plan that provides benefits to those employees who are injured on the job.

. . . .

As a result of the Company not having workers' compensation insurance coverage, you may have certain rights under the common laws of Texas for damages arising out of work-related illness or injury. If, however, you choose to participate in the Company's Occupational Accident Employee Welfare Benefit Plan by requesting the benefits provided by the Plan, you hereby agree to accept the Plan benefits as the only benefits you are entitled to receive in the event of a work-related injury and to waive any and all other causes of action, claims, rights, and demands that you could make against the Company, its successors, assigns, employees, officers, directors, shareholders, agents and clients. Participation in the Company's Occupational Accident Employee Welfare Benefit Plan is not compulsory....

. . . .

By my signature below, I acknowledge that this non-subscriber program has been explained to me, and that I was given the opportunity to ask questions, have my questions answered, and to make comments. It was further explained to me that my employment and/or my continued employment was not conditional upon the execution of this Agreement, but that by my execution of this Agreement I am agreeing to comply with the terms of the Plan and this Agreement. I understand that participation in the Plan is not compulsory, and understanding that, I hereby agree to participate in the Plan and to receive the benefits provided to me by the Company through this Occupational Accident Employee Welfare Benefit Plan. I also understand that, by executing this Agreement, I have waived certain claims and rights as stated herein.

Reyes signed an almost identical document again in November 1984.

Eighteen months after he was hired, Reyes was severely injured when his foot was run over and severed by a forklift driven by a coworker, Leonel Guerrero. Reyes' foot was reattached and over the next eighteen months, the S & P Plan paid to him or on his behalf $89,891.69 in medical benefits and $16,842.86 in wage replacement benefits. Before these benefits terminated, Reyes sued S & P and Guerrero for negligence. After the suit was filed, S & P's attorney demanded the suit be dismissed; in response, Reyes requested his benefits under the S & P Plan be discontinued. But he did not return or tender a return of any of the benefits he had already received.

S & P and Guerrero moved for summary judgment, contending Reyes waived his common law causes of action and subse-

quently ratified that waiver, and he is estopped from contending otherwise by his acceptance of benefits under the S & P Plan. The trial court granted summary judgment against Reyes, and he appealed.

## STANDARD OF REVIEW

We review a summary judgment de novo and will therefore uphold a Rule 166a(c) summary judgment only if the summary judgment record establishes there is no genuine issue of material fact "and the movant is entitled to judgment as a matter of law on a ground set forth in the motion." *Valores Corporativos, S.A. de C.V. v. McLane Co.*, 945 S.W.2d 160, 162 (Tex. App.—San Antonio 1997, writ denied); TEX.R. CIV. P. 166a(c). In determining whether a genuine issue of material fact exists, "we view as true all evidence favorable to the non-movant and indulge every reasonable inference, and resolve all doubts, in its favor." *Valores*, 945 S.W.2d at 162.

## ADEQUACY OF REYES' BRIEF

Guerrero argues we must affirm the summary judgment because Reyes has neither brought forward a general *Malooly*[1] point of error nor specifically challenged estoppel, one of the grounds upon which Guererro and S & P moved for summary judgment. We disagree.

Under the amended Texas Rules of Appellate Procedure, a brief "must state concisely all issues or points presented for review," TEX.R.APP. P. 38.1(e), and "contain a clear and concise argument for the contentions made." TEX.R.APP. P. 38.1(h). "The statement of an issue or point will be treated as covering every subsidiary question that is fairly included." TEX.R.APP. P. 38.1(e).

The requirements of Rules 38.1(e) and 38.1(h) are met in this case. Reyes' brief clearly states the issue presented for review[2] and concisely argues estoppel cannot sustain the trial court's judgment.[3] No more is required.

## WAIVER, RATIFICATION, AND ESTOPPEL

■ Reyes first argues S & P and Guerrero have not conclusively established their affirmative defenses of waiver, ratification, and estoppel because the summary judgment evidence raises a material fact issue regarding whether he understood the waiver he signed sufficiently to be bound by it. While we agree Reyes' affidavit raises this issue of fact, we disagree it is material.

■ One who signs a contract "must be held to have known what words were used in the contract and to have known their meaning, and he must also be held to have known and fully comprehended the legal effect of the contract." *Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 146 (Tex.App.—Houston [1st Dist.]1986, no writ). Illiteracy thus does not relieve a contracting party of the consequences of his agreement. *Id.; Vera v. North Star Dodge Sales, Inc.*, 989 S.W.2d 13, 17 (Tex.App.—San Antonio 1998, no pet.); *Brown v. Aztec Rig Equip., Inc.*, 921 S.W.2d 835, 846 (Tex.App.—Houston [14th Dist.] 1996, writ denied). Indeed, "[a]bsent proof of mental incapacity, a person who signs a contract is presumed to have read and understood the contract, unless he was prevented from doing so by trick or artifice." *Vera*, at 17.

No summary judgment evidence suggests Reyes either lacked the mental capacity to contract or signed the waiver as a result of "trick or artifice." Accordingly,

1. *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119 (Tex.1970).

2. "Should the Occupational Accident Employee Welfare Benefit Plan and its release of claims be fully enforced against Ramon Reyes when Ramon Reyes could not have been held to understand the Plan's terms, could not have been held to understand the English language (the Plan is written in English only) and could not have been held to understand that the Plan inherently violated the Texas Workers' Compensation Act."

3. "A void contract cannot be rendered enforceable by estoppel."

his actual understanding of the effect of what he signed is immaterial. *See id.* Likewise immaterial is whether Reyes asked that his benefits be discontinued upon learning of the S & P Plan terms. Accordingly, if the agreement is enforceable, Reyes ratified it by accepting and retaining its substantial benefits. *See Land Title Co. v. F.M. Stigler, Inc.,* 609 S.W.2d 754, 756–57 (Tex.1980); *Daniel v. Goesl,* 161 Tex. 490, 341 S.W.2d 892, 895 (1960). Similar reasoning would foreclose Reyes' estoppel argument. *See, e.g., Texas Oil & Gas Corp. v. Vela,* 429 S.W.2d 866, 876 (Tex.1968). In short, Reyes is bound by the waiver if it is enforceable.

## Section 406.035

■ Reyes first argues the release is void and unenforceable under section 406.035 of the Texas Workers Compensation Act, which provides "an agreement by an employee to waive the employee's right to compensation is void" "[e]xcept as provided by this subtitle." Tex. Lab. Code Ann. § 406.035 (Vernon 1996). We disagree. Section 406.035 is plainly not intended to apply to agreements by the employees of non-subscribers. *E.g., Martinez v. IBP, Inc.,* 961 S.W.2d 678, 682 (Tex.App.—Amarillo 1998, pet. den.).

## Express Negligence Test

Reyes also argues the waiver is void because it fails the express negligence test. *See, e.g., Ethyl Corp. v. Daniel Constr. Co.,* 725 S.W.2d 705, 708 (Tex.1987). However, Reyes did not raise this issue in his response to the motions for summary judgment and therefore may not raise it on appeal. Tex.R. Civ. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678–79 (Tex.1979).

## Public Policy

Finally, Reyes argues the waiver is void because it violates the public policy ex-pressed by the Texas Legislature in the Texas Workers' Compensation Act. With this argument, we agree.

## Standard of Review

■ Whether an agreement violates public policy is a question of law, which we review de novo. *See Roberts v. San Jacinto Shipbuilders,* 198 S.W.2d 488, 491 (Tex. Civ.App.—Galveston 1946, writ ref'd n.r.e.) (citing *Pierce v. Randolph,* 12 Tex. 290 (1854)).

## Discussion

"To recover damages at common law, an injured worker was required not only to establish that the employer's negligence proximately caused the injury, but also to avoid the defenses of contributory negligence, assumption of the risk, and fellow servant.... [T]his combination of hurdles prevented recovery in a large majority of cases." *Texas Workers' Compensation Comm'n v. Garcia,* 893 S.W.2d 504, 521 (Tex.1995). Therefore, "to meet the needs of an increasingly industrialized society," the Texas Legislature enacted "[t]he Employers' Liability Act of 1913." *Id.* at 510. Under this act, employees injured in the course and scope of their employment waived their common law and statutory causes of action in exchange for the ability to receive more limited benefits "without the necessity of proving negligence and without regard to the employer's potential defenses." *Id.* at 521. Thus, "the Legislature ... substituted a different but certain and adequate legal remedy for the one that existed at common law." *Lebohm v. City of Galveston,* 154 Tex. 192, 275 S.W.2d 951, 954 (1955).

■ The general scheme of the 1913 act was carried forward in the current version of the Texas Workers' Compensation Act. *Garcia,* 893 S.W.2d at 521. Accordingly, an employer may elect to become a work-

ers' compensation insurance subscriber or not. TEX. LAB.CODE ANN. § 406.002 (Vernon 1996). If an employer elects subscriber status, its participating employees may waive their common law and statutory causes of action arising out of workplace injuries, *id.* § 406.034(a), other than those for death proximately caused by an employer's intentional or grossly negligent conduct, *id.* § 408.001(b), in exchange for "lifetime medical benefits, wage replacement during convalescence, impairment benefits, and long-term wage replacement if they suffer a moderately severe physical impairment" "without regard to the employer's negligence and without reduction for the employee's negligence." *Garcia,* 893 S.W.2d at 523. "[T]his quid pro quo, which produces a more limited but more certain recovery, renders the Act an adequate substitute for purposes of the open courts guarantee." *Id.* at 521.

If, on the other hand, an employer chooses to become a non-subscriber, its employees must prove the damages flowing from a workplace injury were proximately caused by the employer's or a coworker's negligence. TEX. LAB.CODE ANN. § 406.033(d). However, the current version of the Texas Workers' Compensation Act, like its predecessor, discourages an employer from choosing non-subscriber status by "abolishing all the traditional common law defenses." *Garcia,* 893 S.W.2d at 511; TEX. LAB.CODE ANN. § 406.033(a).

▆▆▆ As a general rule, if an employer chooses non-subscriber status, "[v]oluntary work[er]'s compensation is purely a matter of contract and the rights and obligations of the parties are measured by the contract." *United States Fidelity & Guar. Co. v. Valdez,* 390 S.W.2d 485, 489 (Tex. Civ.App.—Houston 1965, writ ref'd n.r.e.); *see also Employers Mut. Cas. Co. v. Poorman,* 428 S.W.2d 698, 700 (Tex.Civ.App.— San Antonio 1968, writ ref'd n.r.e.). Accordingly, an agreement by which an employee voluntarily waives her claims arising out of a workplace injury in exchange for a voluntary workers' compensation plan that provides benefits "measured by the terms of the Texas Workmen's Compensation Act" is enforceable and "not contrary to public policy." *Tigrett v. Heritage Bldg. Co.,* 533 S.W.2d 65, 70 (Tex.Civ. App.—Texarkana 1976, writ ref'd n.r.e.); *accord Collier v. Allstate Ins. Co.,* 395 F.2d 719, 720 (5th Cir.1968). Similarly, "[a]n agreement between a non-subscribing employer and its employees whereby the non-subscribing employer contractually obligates itself to provide[] benefits to its employees equal to or greater than those provided under the Texas Workers' Compensation Act is a valid and enforceable contract." *Cupit v. Walts,* 90 F.3d 107, 109 (5th Cir.1996) (applying Texas law).[4]

▆▆▆ But public policy does not permit an employer to reap the principal benefit of providing workers' compensation coverage—the waiver of an injured em-

---

4. To the same effect are the cases involving Intex's voluntary benefits plan, through which Intex "offer[s] no-fault insurance coverage to employees in consideration of the waiver of right to sue, in much the same way that employers who subscribe to the TWCA provide no-fault coverage as an exclusive remedy to employees." *Bustos v. Intex Aviation Servs., Inc.,* No. 3:95–CV–1264–R, slip op. at 12 (N.D.Tex. Aug. 29, 1996); *see also Brito v. Intex Aviation Servs., Inc.,* 879 F.Supp. 650 (N.D.Tex.1995); *Duran v. Intex Aviation Servs., Inc.,* No. 3:95–CV–0403–R, slip op. at 4–5 (N.D.Tex. Nov. 9, 1995), *aff'd,* 98 F.3d 1339 (5th Cir.1996) (table). In *Duran,* the Fifth Circuit declined to reach the public poli-

cy issue because it had not been raised in the trial court. *Duran v. Intex Aviation Servs.,* No. 95–11180, slip op. at 5, 98 F.3d 1339 (5th Cir. Sept.13, 1996). However, the Fifth Circuit and the district court expressly noted Texas courts, including the court in *Brito,* had upheld similar plans as enforceable. *Id.* at 5 n. 3; *Duran v. Intex Aviation Servs., Inc.,* No. 3:95–CV–0403–R, slip op. at 4 & n. 6 (citing *Collier v. Allstate Ins. Co.,* 395 F.2d 719, 720 (5th Cir.1968); *Tigrett v. Heritage Bldg. Co.,* 533 S.W.2d 65 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.); and *Brito* )). As noted above, the voluntary plans in *Tigrett* and *Collier* provided the same benefits provided by workers' compensation insurance.

ployee's common law and statutory claims—without also bestowing on the injured employee the principal benefit for which that waiver is the "quid quo pro"— the limited but certain benefits guaranteed by workers' compensation insurance coverage. *See Hazelwood v. Mandrell Indus. Co.*, 596 S.W.2d 204, 206 (Tex.Civ.App.— Houston [1st Dist.] 1980, writ ref'd n.r.e.). If the "balance" between the extent of the waiver and the receipt of benefits "is tipped so that the employee's benefits under the statute are substantially reduced, the clear intent of the legislature is thwarted." *Id.* Accordingly, an agreement limiting the employer's liability but permitting it to retain its common law defenses is "invalid as against public policy." *Id.; cf. National County Mut. Fire Ins. Co. v. Johnson*, 879 S.W.2d 1, 5 (Tex.1993) (hold-ing the "family member exclusion" in an automobile liability policy was void because it contravened the liability coverage mandated by the Texas Legislature in the Texas Motor Vehicle Safety–Responsibility Act). " 'When the Legislature specifies a particular extent of insurance coverage any attempt to void or narrow such coverage is improper and ineffective.' " *National County*, 879 S.W.2d at 3 (quoting *Unigard Sec. Ins. Co. v. Schaefer*, 572 S.W.2d 303, 307 (Tex.1978)).

Therefore, to determine whether public policy is violated by the S & P Plan, we must compare the waiver it requires and the benefits it provides to similar provisions in the Texas Workers' Compensation Act. We perform this review in the following chart:

| Benefit | Workers' Compensation Act | S&P Plan |
| --- | --- | --- |
| Waiver | all common law and statutory causes of action against the employer and an agent or employee of the employer except causes of action by survivors of "a deceased employee whose death was caused by an intentional act or omission of the employer or by the employer's gross negligence" TEX. LAB.CODE ANN. § 408.001(b). | "any and all other causes of action, claims, rights, and demands that [an employee] could make against the Company, its successors, assigns, employees, officers, directors, shareholders, agents and clients" |
| Medical | lifetime—without limitation on amount; may not be settled or compromised *Id.* § 408.021. | 104 weeks |
| Wage Replacement During Convalescence | 70% of the difference between the claimant's average weekly wage and the post-injury weekly earnings from date of disability until date of "maximum medical improvement" for a maximum of 2 years *Id.* §§ 408.101–.103, 401.011(30). | lesser of $500 or 75% of employee's base salary for a maximum of 104 weeks |
| Impairment | 70% of the claimant's average weekly wage for three weeks for every percentage point of impairment *Id.* §§ 408.121, .126. | none |
| Long–Term Wage Replacement | 80% of the difference between average weekly wages earned during the reporting period and 80% of the pre-injury average weekly wage from date of termination of impairment benefits for a maximum of 401 weeks for claimants with impairment ratings of 15% or more if claimant is earning less than 80% of his or her pre-injury average weekly wage as a direct result of the injury *Id.* §§ 408.083, .142, .144. | none |

| Lifetime | 75% of the pre-injury average weekly wage for claimants with certain severe injuries *Id.* § 408.161. | for claimants with certain severe injuries, 2.5%–100% (depending upon the severity of the injury) × lesser of $500,000 or (10 × employee base salary) |
| Death | same rate as lifetime benefits *Id.* § 408.181. | lesser of $500,000 or (10 × employee base salary) with guaranteed minimum |
| Combined Limit of Liability | none | $500,000 per worker per accident; $5,000,000 per accident for all workers |

*See Texas Workers' Compensation Comm'n v. Garcia,* 893 S.W.2d 504, 513–14 (Tex.1995).

As demonstrated by this chart, the S & P Plan, unlike the Workers' Compensation Act, requires a complete waiver, even of death claims arising out of S & P's intentional and grossly negligent conduct, in exchange for benefits that, while certain, are far more limited than those provided by workers' compensation insurance. As a result, the S & P Plan enables S & P to enjoy all of the advantages of subscriber status—indeed, greater advantages—without providing subscriber-level benefits and, therefore, without requiring S & P to pay all of the associated cost, some part of which is instead shifted to injured employees and their families and, in some cases, the taxpayers who fund state and federal assistance programs. In short, the "balance" between the extent of the waiver required to participate in the S & P Plan and the benefits it provides is so "tipped" in favor of S & P, "the clear intent of the legislature is thwarted." *Hazelwood,* 596 S.W.2d at 206. We therefore hold the S & P Plan violates public policy and the waiver Reyes signed is therefore void and unenforceable.

We recognize our holding will discourage employers from providing voluntary insurance plans with more limited benefits than those provided by workers' compensation insurance and, from an employee's perspective, more limited but certain benefits may be better than none. But to hold otherwise, we believe, would signal the end of workers' compensation insurance. How many employers would choose subscriber status rather than the S & P Plan, with its complete waiver and significantly lower cost?

### CONCLUSION

Because the waiver Reyes signed is void, the trial court erred in granting summary judgment against him on his claims against Storage & Processors, Inc. and Leonel Guerrero. We therefore reverse the trial court's judgment and remand the cause to that court for further proceedings consistent with this opinion.