Gary LAWRENCE, et ux, Martee Lawrence, Appellants,

v.

CDB SERVICES, INC., Appellee.

No. 07–98–0356–CV.

Court of Appeals of Texas, Amarillo.

Jan. 20, 2000.

---

Templeton, Smithee, Hayes, Fields Young & Heinrich, Brian Heinrich, Robert L. Templeton, Amarillo, for appellants.

Gibson, Ochsner & Adkins, L.L.P., S. Tom Morris, Amarillo, for appellee.

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

## ON MOTION FOR REHEARING

PHIL JOHNSON, Justice.

We withdraw our original opinion of October 11, 1999, and issue the following opinion in lieu thereof.

Gary Lawrence (Lawrence) and wife, Martee Lawrence, sued CDB Services, Inc. (CDB) for damages, alleging that Lawrence was injured due to the negligence of CDB. Lawrence was in the course of his employment for CDB at the time of his injury. CDB moved for summary judgment on the basis that prior to his injury Lawrence elected to participate in CDB's Employee Benefit Plan; the written election waived and released Lawrence's rights to recover from CDB; and that Lawrence was estopped from recovering by his acceptance of benefits.[1] The trial court granted summary judgment to CDB. Lawrence did not urge in the trial court and does not assert on appeal that his election, if valid, did not release and waive his right to sue CDB for negligence. Rather, by four issues, Lawrence contends the trial court erred in granting the summary judgment because: (1) his election relinquishing his common law right to sue CDB was executed prior to his injury and therefore violates Texas public policy and is void; (2) his pre-injury election relinquishing his common law right to sue CDB does not meet express negligence and conspicuousness tests; (3) CDB's Employee Benefit Plan does not provide benefits equivalent to the benefits provided under the Texas Workers' Compensation Act,

---

1. Martee Lawrence sued CDB for alleged loss of consortium. Her claim is derivative to the claim of Gary Lawrence. *Bennight v. Western Auto Supply Co.*, 670 S.W.2d 373, 376 (Tex. App.—Austin 1984, writ ref'd n.r.e.). She asserts no basis for reversing the summary judgment against her different from the bases presented by Gary Lawrence.

and therefore the election (and the release and waiver contained in it) are in violation of Texas public policy and void; and (4) CDB's estoppel defense is precluded by Texas public policy because it is based on his pre-injury election which is void because it violates public policy. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Lawrence began working for CDB on November 9, 1994. At that time and at all times relevant to Lawrence's claim, CDB did not carry workers' compensation insurance and was thus a "non-subscriber" to the Texas Workers' Compensation Act (the "Act").[2] CDB, however, provided a benefit plan (the "Plan") that provided medical, disability, dismemberment, and death benefits for employees who chose to participate in it. On November 9, 1994, Lawrence executed a document entitled "Election to Participate in CDB Services, Inc.'s Employee Benefit Plan and Trust" (the "election"). The election provides in part as follows:

> By executing this document, I voluntarily elect to participate in the CDB SERVICES, INC.'S EMPLOYEE BENEFIT PLAN AND TRUST (the "Plan"). According to the Plan, I agree that by accepting benefits under the Plan or executing this election form indicating an election to participate in the Plan:
>
> \* I agree to the Plan's terms.
>
> \* I waive any right I may have to recover from CDB Services, Inc. (the "Employer"), or any of its Affiliated Employers, directors, officers, shareholders, employees, and agents for injuries I sustain or for my death if they arise out of and within the course and scope of my employment with Employer or any Affiliated Employers.
>
> \* I acknowledge that, if I am injured or killed in the course and scope of my employment, my only relief against Employer or any of its Affiliated Employers, directors, officers, shareholders, employees, and agents will be to receive the benefits provided by the Plan.
>
> **I understand that by electing to participate in the Plan, I will lose any right that I may have had to sue Employer or any of its Affiliated Employers, directors, officers, shareholders, employees, and agents because of any injuries, illness, or death I sustain in my employment with Employer or any of its Affiliated Employers resulting from their negligence or any other conduct actionable under the common law of the State of Texas, the statutes of the State of Texas, or under any otherwise available equitable relief. My only remedy will be to pursue benefits under the Plan. Executing this election involves the waiver and release of valuable legal rights.**

The election further sets out that (1) Lawrence did not sign the election under duress; (2) he received a summary plan description; (3) no person made any representation to him on behalf of CDB or its affiliated employers that influenced him to sign the election; (4) Lawrence signed the election of his own free will; (5) he had the option of seeking professional advice before executing the election and had consulted an attorney to the extent he deemed necessary; and (6) he understood the language in the election.[3]

CDB posted notice in a conspicuous place that it did not have workers' compensation insurance covering its employees in the event of work-related illness or injury.

---

**2.** TEX. LAB.CODE ANN. § 401.001, et seq. (Vernon 1996). Subsequent references to various sections of the workers' compensation statutes will be referred to as "Labor Code § ___."

**3.** Lawrence did not assert contractual defenses to the election. *See, e.g., Brito v. Intex Aviation Services, Inc.,* 879 F.Supp. 650, 654 (N.D.Tex.1995).

*See* Labor Code § 406.005(c). The notice stated that the employees "... may have rights under the common law of Texas." When Lawrence was employed, he signed a separate written "Notice to New Employees" which set out that CDB did not have workers' compensation insurance coverage.

On December 5, 1994, Lawrence was injured on the job when a bulldozer he was operating overturned. In June, 1995, the Lawrences filed suit against CDB. The Lawrences assert that Lawrence was injured due to the negligence of CDB.[4] Following his injury, Lawrence accepted payment under the Plan for medical services, disability benefits, and dismemberment benefits. The benefits paid during the three and one-half years following his injury exceeded two hundred thousand dollars. Lawrence is eligible to continue receiving benefits until age 65.[5]

In its motion for summary judgment, CDB contended that (1) Lawrence voluntarily released and waived his common law negligence claim by his execution of the election to participate in CDB's Employee Benefit Plan; (2) Lawrence ratified his pre-injury release and waiver of his common law rights when he applied for and accepted benefits from the Plan following his injury; and (3) the doctrine of estoppel by acceptance of benefits bars Lawrence's claim for negligence. The trial court granted summary judgment to CDB without stating the grounds for its ruling.

4. In their First Amended Original Petition, which was the live pleading at the time the trial court granted summary judgment, the Lawrences did not allege that the injury to Gary Lawrence was the result of gross negligence or intentional injury on the part of CDB.

5. At oral submission, the attorneys for the parties represented that Lawrence continues to receive benefits under the Plan.

6. Lawrence further seeks support in *Memorial Med. Ctr. of East Texas v. Keszler,* 943 S.W.2d 433, 435 (Tex.1997) where the court held that

## STANDARD OF REVIEW

The movant for summary judgment has the burden of proving that no genuine issue exists for any material fact and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548 (Tex.1985). In determining whether a genuine issue of material fact exists, all evidence favorable to the non-movant will be assumed as true and every reasonable inference must be indulged in favor of the non-movant with any doubts resolved in his favor. *Id.* at 548–49. If the basis for the motion is an affirmative defense, the movant must establish all essential elements of the defense as a matter of law. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979).

## PRE–INJURY WAIVER OF NEGLIGENCE

## CAUSE OF ACTION

■ By his first issue, Lawrence asserts that the election relinquishing his right to sue CDB was executed before his injury and therefore is void because it violates Texas public policy. Lawrence primarily relies on *Barnhart v. Kansas City, M. & O. Ry. Co. of Texas,* 107 Tex. 638, 184 S.W. 176 (1916) and *Texas Health Enterprises, Inc. v. Kirkgard,* 882 S.W.2d 630 (Tex. App.—Beaumont 1994, writ denied). He also cites language from *Crowell v. Housing Authority of the City of Dallas,* 495 S.W.2d 887 (Tex.1973) to support his position.[6] In supplementation of his brief,

a post-injury settlement and release for a claim of gross negligence is valid. Lawrence asserts that *Keszler* distinguished pre-injury and post-injury releases, and that an implication can be drawn that a pre-injury release should be invalid. *Keszler* addressed a post-injury release of a claim for gross negligence. As we have noted above, the only claims Lawrence asserted against CDB were for negligence. We do not have before us the issue of whether Lawrence's election waived and released claims for gross negligence. *Keszler* does not support Lawrence's position.

Lawrence urges that *Reyes v. Storage & Processors, Inc.,* 995 S.W.2d 722 (Tex. App.—San Antonio 1999, pet. denied) supports his position.

In *Kirkgard,* an employee sued her non-subscriber employer for wrongful termination of employment after she was fired for refusing to sign a waiver of all workers' compensation rights and common law rights to sue the employer for work injuries.[7] Lawrence claims support in a broad statement by the court that "[a]n employment agreement limiting a non-subscribing employer's liability for job-related injuries is void as against public policy." *Kirkgard,* 882 S.W.2d at 634. Lawrence's confidence in *Kirkgard,* however, is misplaced. First, the *Kirkgard* case involved actions of an employer attempting to coerce employees to execute an agreement waiving rights. Lawrence does not claim that he was coerced into signing his election. Second, the *Kirkgard* court articulated the issue before it as being whether the employee was wrongfully terminated for refusing to sign the waiver. Lawrence is not claiming that he was wrongfully terminated. Third, *Kirkgard* did not involve an employment agreement which limited the non-subscribing employer's liability for job-related injuries; therefore, the quoted statement relied on by Lawrence is dictum.

*Kirkgard* relies, in part, on *Barnhart v. Kansas City, M. & O. Ry. Co. of Texas,* 184 S.W. at 176, which is also cited to us by Lawrence. In *Barnhart,* the employee signed an employment application that acknowledged the employee's having been informed that the job for which he was applying "... will expose me to great danger, the risk of which I assume for myself...." The application provided that Barnhart agreed "... in consideration of my employment ..." to use due and constant care for his own safety while working

for the railway company. *Id.* at 179. Barnhart was injured on the job and sued his employer. On appeal the Supreme Court of Texas affirmed a judgment for the employee. Without citation, the Texas Supreme Court stated that such a contract was void as against public policy because it transferred the burden of defendant's negligence to the employee. *Id. See also, Pullman Co. v. Ransaw,* 203 S.W. 122, 123 (Tex.Civ.App.—El Paso 1918), *aff'd,* 254 S.W. 763 (Tex. Comm'n App.1923, judgm't adopted).

Like *Kirkgard,* the factual basis and legal considerations of *Barnhart* differ from the situation presented by the case before us. In *Barnhart,* the employee was required to assume the risk of injury for no consideration other than employment. Barnhart was provided with no benefits in exchange for the assumption of the risk which he was required to undertake by his employment application. Lawrence, on the other hand, made his election voluntarily. Lawrence chose and received independent consideration when he elected to participate in the Employee Benefit Plan. We do not deem *Barnhart* controlling of our decision.

Lawrence also claims support for his position by language of the court in *Crowell v. Housing Authority of the City of Dallas,* 495 S.W.2d at 887. *Crowell,* however, like *Barnhart* and *Kirkgard,* does not address a pre-injury waiver and release for which independent consideration is established. *Crowell* concerned an exculpatory provision inserted into leases by a low-income housing authority. In reaching its decision that the exculpatory provision was against public policy, the *Crowell* court noted that tenants of the housing authority could only be persons who lacked sufficient income to enable them, without financial assistance, to live in decent, safe and sanitary dwellings without overcrowd-

7.  While Lawrence did not assert a wrongful discharge claim, we note that *Texas Mexican Ry. Co. v. Bouchet,* 963 S.W.2d 52, 57 (Tex. 1998) disapproved of *Kirkgard* to the extent that it held an employee could assert a wrongful discharge claim under the Texas Workers' Compensation Act against a non-subscribing employer.

ing. *Id.* at 889. The court cited the facts as demonstrating a classic example of unequal bargaining power. Prospective tenants had no choice but to accept the terms dictated by the housing authority if they were to enjoy decent housing not otherwise available to them. *Id.* The court set out some general examples of when unequal bargaining power of parties to an agreement might result in the agreement being void. One of the statements made by the court was "It is generally held, for example, that a contract exempting an employer from all liability for negligent injury of his employees in the course of their employment is void as against public policy." *Id.* The court's statement, however, was general and was not directed to a specific set of facts concerning such a contract between an employer and an employee.[8] The factors discussed by the *Crowell* court are not presented in Lawrence's case.

The factual situation presented in *Reyes v. Storage & Processors, Inc.*, 995 S.W.2d 722 (Tex.App.—San Antonio 1999, pet. denied), is very similar to the matter now before us. In *Reyes*, the employee executed a document (the "waiver") before his injury. By his execution of the waiver, Reyes chose to participate in an employee benefit plan (the "S & P Plan") provided by his employer, Storage & Processors, Inc. (S & P). S & P did not carry workers' compensation insurance, and thus, like CDB, was a non-subscriber. The waiver executed by Reyes recited that he understood his participation in the S & P Plan was not compulsory, and that by choosing to participate in the S & P Plan, he agreed to accept the plan benefits as the only

benefits he could receive in the event of a work-related injury.[9] The waiver specifically referenced possible rights that Reyes might have under the common law of Texas, and affirmed that Reyes's employment was not contingent on his choosing to participate in the S & P Plan. *Reyes*, 995 S.W.2d at 724. After Reyes was injured on the job, the S & P Plan began paying benefits to him. Reyes accepted benefits from the S & P Plan and also filed a damage suit against S & P claiming that his injury was caused by the negligence of S & P. The trial court granted summary judgment to S & P. The court of appeals determined that the benefits provided to Reyes by the S & P Plan were not as great as the benefits provided for by the Workers' Compensation Act and held Reyes's waiver to be void because it violated the public policy expressed by the Texas Legislature in the Act. *Id.* at 729. We do not find *Reyes* controlling of our decision. We do not reach the issue of whether the benefits provided by the CDB Plan are as great as those provided by a workers' compensation policy of insurance. However, to the extent our conclusion as expressed hereafter conflicts with *Reyes*, we are in disagreement with it.

In 1987 the Texas Supreme Court adopted the express negligence doctrine. *Ethyl Corp. v. Daniel Const. Co.*, 725 S.W.2d 705, 708 (Tex.1987). Prior to the *Ethyl* decision, Texas courts had considered numerous clauses which were used by contracting parties to attempt to shift responsibility for future acts of negligence of one party or the other. Such clauses met with varying degrees of success when presented to the judiciary for interpretation

---

8. If the statement were to be taken literally, it seemingly would be in conflict with cases holding that the relationship between a subscribing employer, its employee, and the workers' compensation insurer is a tripartite contractual arrangement by which the employee waives certain common law claims against the employer. *See, e.g., Aranda v. Ins. Co. of North America*, 748 S.W.2d 210 (Tex. 1988); *Huffman v. Southern Underwriters*, 133 Tex. 354, 128 S.W.2d 4 (1939); *Middleton v.*

*Texas Power & Light Co.*, 108 Tex. 96, 185 S.W. 556 (1916).

9. Reyes asserted on appeal that the document did not meet the "express negligence" test. The San Antonio court did not reach the issue, however, as Reyes had not raised the issue in his response to S & P's motion for summary judgment. *Reyes*, 995 S.W.2d at 726.

or enforcement. *See id.* In adopting the express negligence rule, the *Ethyl* court did not indicate that such contractual provisions were invalid; it held only that in order for one party to shift the risk of its future negligent conduct to another, the agreement must expressly so state. *Id.*

In *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505 (Tex.1993), the court addressed the issue of whether fair notice requirements applicable to indemnity agreements[10] apply to releases that operate to relieve a party of responsibility for its own negligence in advance of the damage-causing event. In holding that fair notice requirements were applicable to such releases, the court quoted with approval the court of appeals language describing the kinds of agreements at issue:

> [T]hese agreements, whether labeled as indemnity agreements, *releases,* exculpatory agreements, *or waivers,* all operate to transfer risk ... these particular agreements are used to exculpate a party from the consequences of its own negligence. *Id.* at 508 (emphasis added).

The *Dresser* court did not hold or suggest that agreements to relieve a party of liability for its future negligence were invalid.

In 1997 the Texas Supreme Court revisited the subject matter of risk-shifting clauses in agreements. *Green Intern., Inc. v. Solis,* 951 S.W.2d 384 (Tex.1997). In *Green,* the court considered whether the rules set forth in *Dresser* would apply to provisions in construction contracts known as "no-damages-for-delay" clauses:

> [The no-damage-for-delay] clause does not constitute the type of extraordinary risk-shifting found in *Dresser.* It is not an indemnity agreement because it does not shift Green's liability for third party claims to Solis. *Dresser,* 853 S.W.2d at

508. Also, this clause is not a release as defined in *Dresser* because it neither "extinguish[es] the claim or cause of action" nor establishes "an absolute bar to any right of action on the released matter." *Id.*

The distinction between *Dresser* and this case lies in the fact that *Dresser* concerned the shifting of tort and negligence damages, whereas the no-damages-for-delay clause shifts economic damages resulting from a breach of contract. *Green,* 951 S.W.2d at 387.

The court again made no suggestion that risk-shifting clauses executed in advance of the injurious event were invalid. Thus, we determine that agreements by which one party releases another party from responsibility for future acts of negligence have long been part of otherwise valid contracts in Texas. Agreements such as Lawrence's election are not in and of themselves in violation of public policy. Finding no violation of public policy by such an election otherwise valid, we examine the Texas Workers' Compensation Act to determine if the Texas Legislature has expressed its intent that we void such agreements between an employer and an employee.

■ The Workers' Compensation Act provides the framework for a tripartite contractual relationship in which the employer, the employee, and the workers' compensation insurance carrier are parties. *Aranda v. Ins. Co. of North America,* 748 S.W.2d 210, 212 (Tex.1988); *Huffman v. Southern Underwriters,* 133 Tex. 354, 359, 128 S.W.2d 4, 6 (1939). An employer has the option of providing workers' compensation insurance for employees and thereby becoming a subscriber under the Act, or not providing workers' compensation insurance and thereby remaining a non-subscriber.[11] Employees of a sub-

---

10. *See Enserch Corp. v. Parker,* 794 S.W.2d 2 (Tex.1990).

11. Some employers have on occasion been excluded from provisions of the Act. Providing workers' compensation insurance is mandatory for certain classes of employers. *See*

*generally,* Labor Code §§ 406.091–406.165. No allegation is made that CDB is a member of either an excluded group or a group whose members are required to carry workers' compensation insurance.

scribing employer have the option of (1) entering into the tripartite contract, thereby accepting the proferred benefits of coverage by a workers' compensation insurance policy and waiving specified common law rights against the employer in the event of an on-the-job injury; [12] or (2) electing to retain their common law rights against the employer in the event of an injury on the job, and foregoing coverage by their subscribing employer's workers' compensation insurance policy. *E.g., Paradissis v. Royal Indem. Co.,* 507 S.W.2d 526, 529 (Tex.1974); *Middleton v. Texas Power & Light Co.,* 108 Tex. 96, 185 S.W. 556, 558–59 (1916). Thus, since 1917,[13] participation in the workers' compensation system has been voluntary and elective as to both employer and employee. *E.g., Paradissis,* 507 S.W.2d at 529; *Anderson–Berney Realty Co. v. Soria,* 123 Tex. 100, 67 S.W.2d 222, 222–23 (1933).

For varying reasons, the Texas workers' compensation system has been the source of some dissatisfaction through the years. *See, e.g., Texas Workers' Compensation Comm'n v. Garcia,* 893 S.W.2d 504, 512–13 (Tex.1995) and authorities cited therein. Partly in response to dissatisfaction with the system, the Legislature periodically amended the Act. By the early 1980's, confidence in the system had fallen to extraordinary lows. A perceived crisis in workers' compensation insurance resulted in an intensive study of the system. Following receipt of a report from the legislative Joint Select Committee on Workers'

Compensation Insurance in 1988, the Legislature restructured the system. *See id.* The new Act was termed by some as a radical change in the system and several of its provisions were challenged as being in violation of Texas Constitutional guarantees. *Id.* at 510, 534.

Despite the changes periodically made to the Act by the Legislature in such areas as the amount of benefits payable to an injured worker, the manner in which benefits could be paid, the method of calculation of benefits, and the method of dispute resolution, the Legislature has not altered the principle that an employee waives certain common law rights against a subscribing employer when the employee elects to accept workers' compensation insurance coverage provided by the employer. The 1913 version of the Act [14] stated in plain language what can only be described as the Legislature's policy decision that in Texas an employee can waive specified common law rights in exchange for some level of fixed benefits to be provided without regard to fault in the event of an injury on the job. That policy has remained continuously manifested in the express language of the Act, although the amount, manner of calculation, timing, and delivery procedures of the compensation received by the employee has changed periodically. The Legislature specifically addressed the subjects of non-subscribing employers and waivers of rights by employees in the Act.[15] For example, section

---

**12.** Not all common law rights are waived by the employee and his beneficiaries. *See* Labor Code §§ 406.034(b)(d), 408.001(b).

**13.** *See Texas Workers' Compensation Comm'n v. Garcia,* 893 S.W.2d 504, 511 n. 2 (Tex. 1995).

**14.** The original enactment did not give employees the right to elect out of the workers' compensation system and continue working for a subscribing employer. Rather, if an employer was or became a subscriber, then actual notice to employees of subscriber status was required, and the employees who worked for the subscriber waived their com-

mon law rights by continuing in the employment for the subscriber. In upholding the constitutionality of the original Act, the Texas Supreme Court deemed the employee's choice to work for a subscribing employer as an election to waive the employee's common law rights against the employer, to the extent provided in the Act. *Middleton,* 185 S.W. at 559. The Act was amended in 1917 to allow employees the option of electing out of the system, and yet remaining employed by a subscriber. *See* Acts 1917, 35th Leg., ch. 103, § 3a.

**15.** The Act specifically addresses the following subjects in separate sections: (1) the em-

406.033 provides for restrictions on defenses available to a non-subscriber in a suit by its employee to recover damages for personal injury or death sustained in the course and scope of employment. The addition of subsection 406.033(b) in the new Act evidences the Legislature's revisiting of the issue of the common law rights of employees and employers when workers' compensation insurance is not provided by the employer. Section 406.035 provides that except as provided by the Act, an agreement by an employee to waive the employee's right to compensation is void. Further, the Act provided for a Legislative Oversight Committee to monitor the workers' compensation system and to periodically report to the governor, the lieutenant governor, and the speaker of the house of representatives on certain matters, including problems in the system and recommendations for legislative action. Labor Code §§ 405.001–405.006 (repealed by Acts 1995, 74 th Leg., ch. 907, § 2). The Legislature provided for a Research and Oversight Council on Workers' Compensation to conduct studies and research on certain specified aspects of the workers' compensation system, as well as "other matters relevant to the cost, quality, and operational effectiveness" of the system. *See generally,* Labor Code ch. 404. The Council Board of Directors includes members of the Legislature. The Council is to hold regular public hearings and receive testimony and reports from entities involved in the workers' compensation system. The Council monitors operation of the system and periodically reports to the governor, the lieutenant governor, and the speaker of the house. Its reports are to include identification of problems in the system and recommendations for legislative and regulatory action. *See id.*

From time to time the Legislature has imposed restrictions on the rights of parties to make contracts, including some contracts involving employers and employees. For example, chapter 171 of the Civil Practice and Remedies Code provides that written arbitration agreements are valid and enforceable as to controversies that exist at the time of the agreement or arise after the date of the agreement, except for certain specified categories of agreements. TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.001, 171.002 (Vernon Supp.2000). Agreements between employers and labor unions and claims for workers' compensation benefits are not subject to Chapter 171. Section 171.002(a)(1),(4). Nor are agreements to arbitrate claims for personal injuries subject to Chapter 171 unless each party to the claim agrees in writing, upon the advice of counsel, to arbitrate, and signs the agreement along with his or her attorney. Section 171.002(a)(3),(c). And through the Business and Commerce Code the Legislature has (1) limited the manner in which agreements containing covenants not to compete may restrain activities of a promisor, and (2) made the statutory provisions preemptive of other criteria for enforceability of such agreements. TEX. BUS. & COM.CODE ANN. §§ 15.50, 15.51, 15.52 (Vernon Supp.2000). The Legislature has expressly declared its sense that certain agreements providing for indemnity to negligent indemnitees create inequities and are against the public policy of this state. TEX. CIV. PRAC. & REM.CODE ANN. § 127.002(a),(b) (Vernon 1997). The Legislature has also expressly declared certain indemnity provisions in agreements pertaining to wells for oil, gas, or water, or to a mine for a mineral to be void. Section 127.003. Thus, we see that

ployer's election to become a subscriber, Labor Code § 406.002; (2) the employee's election to retain common law rights, Labor Code § 406.034; (3) the effects of an employer remaining a non-subscriber, Labor Code § 406.033; and (4) prohibition of the employee's waiver of the right to compensation, Labor Code § 406.035. The Act makes

many, but not all, non-subscribing employers subject to provisions concerning worker health and safety, such as reporting injuries and diseases resulting in lost time by employees, extra-hazardous employer programs, and prohibitions against retaliation against employees for reporting safety violations. *See generally,* Labor Code ch. 411.

when it deemed appropriate, in the Workers' Compensation Act as well as in other statutes, the Legislature has expressly voided or prohibited certain types of contractual provisions. It has likewise statutorily declared that certain contractual provisions are in violation of public policy of this state.

Considering appellant's issue in context of the foregoing, we find no part of the Workers' Compensation Act by which the Legislature has expressly nullified, or even limited the scope of, an agreement such as the one before us merely because it was executed prior to the employee's injury. Further, despite the long period of time since workers' compensation statutes were originally enacted, despite the Legislature's extensive study of the workers' compensation system before the 1989 legislative session by a legislative select committee, its consultants and assistants,[16] extensive legislative consideration through one regular and two special sessions of the Legislature, and continued scrutiny and monitoring of the system through the Legislative Oversight Committee and the Research and Oversight Council on Workers' Compensation, we find no express or implied declaration in the Act of legislative intent to establish public policy voiding an agreement such as the election by Lawrence because it was executed before his injury.[17]

We thus conclude that in the Workers' Compensation Act the Texas Legislature has neither expressly nor impliedly established a public policy with which Lawrence's pre-injury execution of his election conflicts. Having determined that public policy is not violated by Lawrence's execution of his election before the injury-causing event, we overrule his first issue.

### EXPRESS NEGLIGENCE AND CONSPICUOUSNESS

By his second issue, Lawrence asserts that (1) his election does not meet

the requirements of the express negligence doctrine adopted in *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 707–08 (Tex. 1987) because the election does not expressly waive claims for negligence arising out of the negligent activity of others, including CDB's employees; and (2) the waiver of his negligence cause of action is not conspicuous.

The express negligence doctrine requires that in order for a party such as CDB to contractually shift risk from itself for the consequences of its own future negligence, the party must specifically express that intent within the four corners of an agreement. *Ethyl*, 725 S.W.2d at 707–708; *See also, Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). A clause shifting the risk for a party's own future negligence is also required to be conspicuously written, so that a reasonable person against whom it is to operate should notice it. *Dresser*, 853 S.W.2d at 511. A clause is conspicuous if it has language in capital headings, or has language in contrasting type or color. *Id.* (citing Tex. Bus. & Com.Code Ann. § 1.201(10)).

We find that CDB's election meets both the express negligence and conspicuousness requirements. In contrasting boldface type on the front page of the election it reads in part, "[I] **will lose any right that I may have had to sue Employer or any of its Affiliated Employers, directors, officers, shareholders, employees, and agents ... because of any injuries, illness, or death I sustain in my employment with Employer ... resulting from their *negligence* ....**" (emphasis added). The election specifically expresses the intent that Lawrence is waiving his right to sue CDB because of the negligence of CDB or its employees. Further,

**16.** *See* 1 John T. Montford, Et Al., A Guide To Texas Workers' Comp Reform, pp. 1–8, 4–14 through 4–33 (1991).

**17.** *Compare* Labor Code § 408.006(a) where the Legislature expressly stated its intent as to a part of the statute.

an ordinary person should have noticed the specific expression that Lawrence was foregoing his right to sue CDB for injuries resulting from the negligence of CDB and the referenced persons. The paragraph containing the phrase is eight lines long, and the subject matter of the entire paragraph is that Lawrence is waiving and releasing valuable rights against the parties named in the paragraph. The entire election document is a relatively short two pages. Lawrence's second issue is overruled.

By his third issue, Lawrence contends that his election is in violation of public policy and void because CDB's Plan benefits are not equivalent to the benefits provided under the Texas Workers' Compensation Act. By his fourth issue, he asserts that CDB's estoppel defense is precluded by Texas public policy. The basis for Lawrence's fourth issue is his claim that acceptance of benefits cannot validate the pre-injury election which he claims is void because it is in violation of public policy. In his response to CDB's motion for summary judgment in the trial court, however, Lawrence did not present these issues. As the non-movant, Lawrence was required to expressly present these issues to the trial court in order to rely on them to negate CDB's entitlement to summary judgment. TEX.R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex.1979); *Bell v. Showa Denko K.K.*, 899 S.W.2d 749, 756 (Tex.App.—Amarillo 1995, writ denied). The trial court did not have opportunity to consider these issues and Lawrence may not raise them for the first time on appeal. Tex.R. Civ. P. 166a.(c); TEX.R.APP. P. 33.1(a). We overrule Lawrence's third and fourth issues.

Because Lawrence's election is not void as he urges on appeal, the trial court correctly granted summary judgment to CDB on the grounds that Lawrence released and waived his common-law negligence claims against CDB. We need not and do not consider whether summary judgment would have been proper on either the basis that Lawrence ratified his release and waiver or on the basis that he was estopped from asserting his release and waiver was void.

The judgment of the trial court is affirmed.