Kevin W. WOLFE, Appellant,

v.

C.S.P.H., INC. d/b/a Domino's Pizza, Appellee.

No. 05–98–00214–CV.

Court of Appeals of Texas, Dallas.

Aug. 8, 2000.

that were asserted against Liberty Mutual due        solely to its acquisition of Golden Eagle.

Ronald E. Harden, The Harden Law Firm, L.L.P., Terrell, for Appellant.

Jay Wallace, Gibson, McClure & Wallace, L.L.P., Dallas, for Appellee.

Before Justices LAGARDE, MOSELEY, and FITZGERALD.

## OPINION

Opinion By Justice FITZGERALD.

On the Court's own motion, we withdraw our opinion of April 19, 2000. The following is now the opinion of the Court.

After suffering an on-the-job injury, Kevin W. Wolfe sued his employer, C.S.P.H. d/b/a Domino's Pizza (CSPH), for negligence. CSPH moved for summary judgment on the ground that Wolfe had contractually waived his right to sue CSPH for work-related injuries. The trial court granted summary judgment for CSPH. In three points of error, Wolfe contends the trial court erred in granting summary judgment because (1) section 406.035 of the Texas Labor Code and public policy prohibit waiver of an employee's right to compensation; (2) the doctrine of ratification does not apply; (3) certain summary judgment evidence was inadmissible; and (4) the trial court used an improper standard of review. Because we conclude Wolfe voluntarily waived his right to sue for additional compensation, no public policy exception applies, and his other points are without merit, we affirm the trial court's judgment.

### Factual Background

CSPH employed Wolfe as a truck driver to deliver supplies to various Domino's outlet stores. According to Wolfe, during one of these deliveries, the products in his truck shifted and fell on his neck and shoulders as he restacked the supplies. CSPH was a nonsubscriber to the Texas

Workers' Compensation Act (the Act) but had an Injury Benefit Plan for employees. Under this two-tiered plan, employees were automatically entitled to a first tier of benefits. CSPH employees could voluntarily participate in a second level, the Enhanced Benefits Program, in which employees received a greater package of benefits than under the standard Injury Benefit Plan in exchange for a waiver of the right to sue CSPH for work-related injuries. To receive the enhanced benefits, an employee who opted into the Enhanced Benefits Program was not required to prove the injury was caused by any fault of CSPH.

When he began working for CSPH, Wolfe elected to participate in the Enhanced Benefits Program and, in doing so, executed the following waiver of his right to sue CSPH:

> In consideration of this election to become eligible to receive additional medical, income, dismemberment, and death benefits under the [Injury Benefit] Plan, I hereby waive my rights under the Act, any other statute, or common law to bring legal action and recover judgment against [CSPH] and/or its affiliates, directors, officers, agents, and employees, and fully release such parties from liability, for any damages arising from any personal injury incurred (i) in the course of my employment by [CSPH], and (ii) during my participation in the Plan or by reason of death resulting from such injury.... I agree that amounts payable under the Plan, which are paid or funded solely by [CSPH], shall be the exclusive remedy for me and my legal beneficiaries arising from any such personal injury or death.

Just above Wolfe's signature, the waiver further provided, "I acknowledge that I knowingly and voluntarily enter into this Waiver and that I fully understand the

meaning and effect of my action in signing it."

After Wolfe was injured, CSPH paid him enhanced benefits for over eighteen months. Wolfe then brought this suit against CSPH for negligence.[1] CSPH moved for summary judgment, asserting it was entitled to judgment as a matter of law because Wolfe had contractually waived his right to sue CSPH for work-related injuries. The trial court granted summary judgment for CSPH. This appeal followed.

## STANDARD OF REVIEW

The standards for reviewing a traditional summary judgment are well established: (1) the movant for summary judgment has the burden of showing there is no genuine issue of material fact and he is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in his favor. See *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); see also Tex.R. Civ. P. 166a(c). A defendant who moves for summary judgment must show the plaintiff has no cause of action. A defendant may meet this burden by either: (1) disproving at least one essential element of each theory of recovery; or (2) conclusively proving all elements of an affirmative defense. See *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex.1990).

## DISCUSSION

In his first point of error, Wolfe contends the trial court erred in granting summary judgment because section 406.035 of the Texas Labor Code and a general public policy embodied in the Act

---

1. According to CSPH, Wolfe has not offered to return the enhanced benefits he received from CSPH.

apply to both subscribers and nonsubscribers of workers' compensation insurance and prevent Wolfe from waiving his right to sue CSPH for work-related injuries.

## 1. Section 406.035

■ The Texas Workers' Compensation Act provides that "an agreement by an employee to waive the employee's right to compensation is void." *See* TEX. LAB.CODE ANN. § 406.035 (Vernon 1996). The legislature enacted specific definitions for several of the words relevant to this statute. The Act defines "agreement" as "the resolution by the parties to a dispute under [the Act] of one or more issues regarding an injury, death, coverage, compensability, or compensation." *See* TEX. LAB.CODE ANN. § 401.011(3) (Vernon Supp.2000). "Compensation" is defined as "payment of a benefit." *See id.* § 401.011(11). Further, "benefit" means "a medical benefit, an income benefit, a death benefit, or a burial benefit based on a compensable injury." *See id.* § 401.011(5). A "compensable injury" is one that "arises out of and in the course and scope of employment for which compensation is payable under [the Act]." *See id.* § 401.011(10).

At least two Texas courts of appeals have addressed the applicability of section 406.035 to nonsubscribers of the Act. *See Reyes v. Storage & Processors, Inc.*, 995 S.W.2d 722 (Tex.App.-San Antonio 1999, pet. denied); *Martinez v. IBP, Inc.*, 961 S.W.2d 678 (Tex.App.-Amarillo 1998, pet. denied). Both courts held the legislature did not intend this section to apply to the employees of nonsubscribers. *See Reyes*, 995 S.W.2d at 726 (citing *Martinez*, 961 S.W.2d at 682); *see also Brito v. Intex Aviation Servs., Inc.*, 879 F.Supp. 650, 653–54 (N.D.Tex.1995). We agree. The definitions of "compensation," "benefit," and "compensable injury" establish that this section applies to a payment of benefits based on an injury compensable under the Act. Because nonsubscribers' employees are not entitled to benefits under the Act, section 406.035 does not apply to

waiver agreements by employees of nonsubscribers. In the present case, CSPH was a nonsubscriber to the Act, and therefore Wolfe had no right to receive compensation under the Act. Wolfe's execution of the waiver in this case did not affect such a right to compensation under the Act that he was not otherwise entitled to as the employee of a nonsubscriber. As such, section 406.035 is not applicable in this case and provides no support for Wolfe's contention that the waiver is void.

The Act provides further evidence of the legislature's intent for section 406.035 to apply only to subscribers. Section 406.033 states that in an action by an employee against a nonsubscriber employer for work-related injuries, the employer may not assert the following common-law defenses: (1) contributory negligence; (2) assumption of the risk; and (3) negligence of a fellow employee. TEX. LAB.CODE ANN. § 406.033(a) (Vernon 1996). The defense of waiver is an affirmative defense but is not included as a prohibited defense for nonsubscribers. *See id.; LSR Joint Venture No. 2 v. Callewart*, 837 S.W.2d 693, 699 (Tex.App.-Dallas 1992, writ denied). Because the legislature did not include waiver as a prohibited defense for nonsubscribers, CSPH is entitled to assert this defense in response to Wolfe's cause of action. Further, we decline to judicially create a fourth prohibited defense for nonsubscribers, particularly in light of the fact that the legislature has specifically addressed a nonsubscriber's right to rely on common-law defenses. We overrule Wolfe's first point of error to the extent it addresses the application of section 406.035 to nonsubscribers.

## 2. Public Policy

■ Wolfe also contends there is a general public policy incorporated in the Act that prohibits employees from executing these types of waivers. This issue was recently addressed in *Lawrence v. CDB Services, Inc.*, 16 S.W.3d 35 (Tex.App.-Amarillo 2000, pet. filed). In *Lawrence*,

the employer was a nonsubscriber to workers' compensation insurance but provided benefits through an employee benefit plan for employees who elected to participate in the plan. *Id.* at 37. Lawrence signed an election to participate in the employee benefit plan and, as a requirement for participation, he waived his right to recover from the employer for work-related injuries. *Id.* Lawrence was injured in a work-related accident and received benefits under the plan for over three years before suing his employer for negligence. *Id.* at 38. Lawrence argued the election to participate in the employee benefits plan that included the waiver of his right to sue his employer was void because it violated public policy. The court disagreed and found the legislature "has neither expressly nor impliedly established a public policy with which Lawrence's pre-injury execution of his election conflicts." *Id.* at 44.

We agree with the *Lawrence* court that preinjury participation in a voluntary worker's compensation plan in exchange for a waiver of the right to sue is not contrary to public policy. As a nonsubscriber, CSPH's voluntary worker's compensation was purely a matter of contract and the rights and obligations of the parties were measured by the contract. *See Reyes,* 995 S.W.2d at 727. Wolfe contractually agreed to the terms of the waiver in exchange for certain enhanced benefits without the need to prove negligence on the part of CSPH. Wolfe was not required to execute the waiver as a condition of his employment. Rather, his participation in the Enhanced Benefits Plan was entirely voluntary. As stated in *Lawrence,* the legislature has not established a public policy that conflicts with Wolfe's preinjury waiver in exchange for enhanced benefits. We decline to judicially create public policy on a subject the legislature has clearly addressed.

We recognize that the San Antonio Court of Appeals took a different approach to this issue in *Reyes v. Storage & Processors, Inc.,* a case with facts similar to both *Lawrence* and the present case. In *Reyes,* the court held that a waiver of workplace claims in exchange for a nonsubscriber's voluntary workers' compensation plan is enforceable and not contrary to public policy only if the employer's plan provides benefits equal to or greater than those provided under the Act. *Id.* at 727–28. Wolfe, however, has not asserted in either his summary judgment response or appellate brief that CSPH's plan provides lesser benefits than those provided under the Act and that for this reason his waiver is contrary to public policy. Therefore, we decline to make this argument for him and *sua sponte* compare the Injury Benefit Plan to benefits under the Act.

Because the waiver was not against any legislatively created public policy, and the parties entered into a contract regarding the rights and obligations of the parties, the trial court did not err in granting summary judgment. We overrule Wolfe's first point of error on the issue of public policy.

### 3. Duress

Wolfe also contends the waiver is invalid because he signed it under duress. Duress requires proof of a threat to do something which the threatening party has no right to do. *See Martinez,* 961 S.W.2d at 684. Wolfe did not present the trial court with any evidence of duress. His general assertion in his affidavit and deposition that he did not recall signing the document does not rise to the level of a threat. Further, Wolfe testified he could not recall any documents, other than possibly reprimands, that CSPH forced him to sign or tried to force him to sign. Therefore, he did not present any evidence of a threat. Because Wolfe did not present evidence to support an element of duress, this contention does not present reversible error.

### 4. Ratification

In point of error two, Wolfe contends the trial court erred in granting summary

judgment because the common-law doctrine of ratification does not supplant the statutory prohibition against waiver contained in section 406.035. CSPH had argued to the trial court in the alternative that Wolfe ratified the waiver by accepting benefits under the Injury Benefit Plan. Because we have found no prohibition against Wolfe's waiver, we need not address this point of error. *See* Tex.R.App. P. 47.1.

## 5. Evidentiary Issues

■ In Wolfe's third point of error, he generally contends the trial court erred in granting summary judgment. In his argument on this point, Wolfe claims the trial court erred in considering the following summary judgment evidence presented by CSPH: (1) the affidavit of Joy Wilson, CSPH's Plan Administrator; (2) CSPH's Injury Benefit Plan; (3) Wolfe's waiver; (4) copies of canceled checks from the Injury Benefit Plan; and (5) copies of unpublished opinions.

Wolfe first contends the Wilson affidavit is conclusory. He also argues Wilson does not establish she is competent to testify or that the affidavit is based on personal knowledge. To support a motion for summary judgment, an affidavit "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *See* Tex.R. Civ. P. 166a(f). We review a trial court's rulings concerning the admission of summary judgment evidence under an abuse of discretion standard. *See Steinkamp v. Caremark*, 3 S.W.3d 191, 194 (Tex.App.-El Paso 1999, no pet.).

In her amended affidavit, Wilson stated she was over the age of eighteen years, of sound mind, capable of making the affidavit, had personal knowledge of the facts in the affidavit, and the facts were true and correct. She also stated she was the Plan Administrator for CSPH and the custodian of records for the Injury Benefit Plan.

Wilson further testified about the existence of the Injury Benefit Plan and the voluntary option of participating in the Enhanced Benefits Program. She also stated Wolfe enrolled in the Enhanced Benefits Program and described the benefits CSPH paid Wolfe after his work-related injury. After reviewing the affidavit, we find it is not conclusory but rather was made by a competent witness with personal knowledge and set forth facts that would be admissible in evidence.

Wolfe's complaints about defects in Wilson's original affidavit are immaterial to the disposition of this case. After Wolfe objected to the original affidavit, CSPH filed an amended affidavit that clearly supplanted the original affidavit. Therefore, any defects in the original affidavit are irrelevant and do not present reversible error.

■ Wolfe also complains about hearsay in Wilson's amended affidavit and CSPH's failure to incorporate the affidavit into the motion for summary judgment. Wolfe does not point us to any specific inadmissible hearsay, and we find none. In addition, while Wolfe contends the affidavit was not properly incorporated as evidence, CSPH referred to the affidavit in its motion for summary judgment and attached the affidavit as evidence. Therefore, the affidavit was sufficiently incorporated as summary judgment evidence. *See* Tex.R. Civ. P. 166a(c). As a result, the trial court did not abuse its discretion in admitting the affidavit.

■ Wolfe also makes general references to the trial court's improperly admitting the CSPH Injury Benefit Plan, a copy of Wolfe's waiver, copies of canceled checks from the Injury Benefit Plan, and copies of various court opinions. Wolfe presents no authorities or record references to support his assertion that the trial court erred in considering these documents. Wolfe has therefore waived any error on this issue. *See* Tex.R.App. P. 38.1(h) ("The brief must contain a clear

and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Further, Wolfe generally asserts the trial court refused to rule on his objections to these items. However, he has not pointed us to any part of the record where he objected to this evidence and the trial court refused to rule after an objection to the refusal to rule. *See* Tex. R.App. P. 33.1(a)(2)(B). Therefore, Wolfe has waived any error in the trial court's admission of this evidence. We overrule Wolfe's third point of error regarding evidentiary issues.

### 6. Proper Standard of Review

■ Also in his third point of error, Wolfe contends the trial court improperly used the federal summary judgment standard of review rather than appropriate state law. Wolfe's appellate brief does not contain a clear and concise argument to explain his reasons for this assertion. *See* Tex.R.App. P. 38.1(h). Further, he does not cite any authorities or record references to support this contention, and we find none. Therefore, Wolfe has waived any error in this regard. *See id.* We overrule Wolfe's third point of error regarding the appropriate standard of review.

Accordingly, we affirm the trial court's judgment.