TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00287-CV






Helen F. Castellow, Appellant



v.



Swiftex Manufacturing Corporation, Individually and d/b/a Swiftex, Inc., Appellee







FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT


NO. 22,990, HONORABLE HAROLD R. TOWSLEE, JUDGE PRESIDING







 Appellant Helen F. Castellow sued her employer, appellee Swiftex Manufacturing
Corporation (Swiftex), for negligence that proximately caused injuries she incurred in the course
of her employment. Swiftex is not a subscriber to workers' compensation insurance but offers a
private benefit plan that requires an employee to waive her common-law remedies for the
employer's negligence in causing on-the-job injuries. The trial court granted Swiftex's motion for
summary judgment which asserted waiver, ratification, and estoppel. The sole issue appellant
raises on appeal is whether the waiver Castellow signed is unenforceable because it violates public
policy. We hold that the waiver thwarts the intent of the legislature embodied in the statutory
workers' compensation scheme and reverse the trial court's summary judgment in favor of
Swiftex.

FACTS AND PROCEDURAL HISTORY

 Castellow was hired in January 1998. Swiftex did not subscribe to workers'
compensation insurance but instead offered its own "Employee Safety Program Benefit Plan" (the
Plan). The parties stipulate that participation in the Plan was voluntary but required a waiver of
all common-law remedies against Swiftex for on-the-job injuries. Castellow elected to participate
in the Plan and signed the waiver, relinquishing her right to sue Swiftex or its employees for
injuries or death sustained in the course of her employment that resulted from the sole or
concurrent negligence of Swiftex. The waiver provided in bold language, "My only remedy will
be to receive benefits under the Plan."

 In February 1999, Castellow was injured after tripping over a cord in her work 
area, which she described as "small and cramped." Castellow made a claim and received medical
and wage replacement benefits under the Plan. She has never paid back any of these benefits.

 Ignoring the terms of the waiver, Castellow filed this suit in June 1999 alleging that
Swiftex's negligence in failing to provide a safe work environment proximately caused her
injuries. In September, Swiftex filed a motion for summary judgment asserting that Castellow's
claims were barred because she had agreed to waive her claims by voluntarily electing to
participate in the Plan; that she ratified the waiver by accepting and not returning, or offering to
return, the benefits she received; and that she is estopped from adopting an inconsistent position
by suing Swiftex.

 Castellow did not file a response or appear at the summary-judgment hearing. The
trial court granted Swiftex's motion on November 3, 1999, without stating its grounds. Castellow
filed a response to the motion for summary judgment on December 16. On January 6, 2000,
Castellow appealed the court's granting summary judgment, and on January 24, she filed a motion
for new trial.


DISCUSSION

 Because the propriety of a summary judgment is a question of law, we review the
trial court's decision de novo. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994);
Texas Dep't of Ins. v. American Home Assurance Co., 998 S.W.2d 344, 347 (Tex. App.--Austin
1999, no pet.). The standards for review of a summary judgment are well-established: (1) the
movant must show there is no genuine issue of material fact and that it is entitled to judgment as
a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary
judgment, the court must take evidence favorable to the nonmovant as true; and (3) the court must
indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the
nonmovant's favor. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). 
Swiftex has the burden of showing that Castellow could not succeed on any theory pleaded. See
San Antonio Express News v. Dracos, 922 S.W.2d 242, 247 (Tex. App.--San Antonio 1996, no
writ). When the trial court's summary judgment does not specify the grounds relied upon, we
must affirm the court's judgment if any of the summary-judgment grounds is meritorious. Bradley
v. State ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999).

 Castellow's sole challenge to the summary judgment in Swiftex's favor is her
assertion that the waiver she signed is unenforceable because its terms are contrary to public
policy. Whether an agreement violates public policy is a question of law, which we review de
novo. Reyes v. Storage & Processors, Inc., 995 S.W.2d 722, 726 (Tex. App.--San Antonio 1999,
pet. denied). Castellow concedes that if the waiver is not contrary to public policy, it is otherwise
enforceable.


Preservation of Error

 Swiftex argues that Castellow failed to preserve error in two ways: first, by failing
to appeal all three points on which the summary judgment could have been based; and second, by
not presenting the issue on appeal to the trial court prior to its ruling on the motion for summary
judgment.

 Swiftex maintains that the summary judgment must be affirmed because Castellow
failed to attack every possible ground upon which the trial court based its summary judgment and
she did not assert a general assignment of error in granting the summary judgment. See Malooly
Bros., Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970). General assignment of error, or specific
attack on each ground on which the summary judgment was possibly based, is not necessary here
because disposition of the public policy issue necessarily disposes of the entire case. If the waiver
contravenes public policy and is unenforceable, then Swiftex's ratification and estoppel arguments
fail. See Peniche v. Aeromexico, 580 S.W.2d 152, 157 (Tex. Civ. App.--Houston [1st Dist.]
1979, no writ) ("It is well settled that an illegal contract cannot be ratified or saved by estoppel."). 
If the waiver is enforceable, then Castellow concedes that waiver, estoppel, and ratification will
defeat her cause of action. See Reyes, 995 S.W.2d at 726. Castellow clearly states her issue on
appeal and concisely argues that the waiver is unenforceable as a matter of public policy. This
is sufficient to preserve this issue for our review. See id. at 725.

 Next, Swiftex argues that Castellow failed to present to the trial court, in writing,
her contention that the waiver is unenforceable prior to the hearing on Swiftex's motion for
summary judgment. The non-movant must expressly present to the trial court, by written answer
or response to the motion, those issues that would defeat the movant's right to a summary
judgment. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 679 (Tex. 1979). If the
non-movant fails to do so, she may not later assign those issues as error on appeal. Id. "[B]oth
the reasons for the summary judgment and the objections to it must be in writing before the trial
judge at the hearing." Id. at 677. The exception to this rule is when "the grounds expressly
presented to the trial court by the movant's motion are insufficient as a matter of law to support
summary judgment." Id. at 678.

 In her motion for new trial, Castellow asserted that, as a matter of law, the waiver
she signed is unenforceable because it offends public policy. Her motion for new trial was
overruled by operation of law. See Tex. R. Civ. P. 329b(b). She was not required to file an
answer to the motion for summary judgment to preserve her contention that the grounds for
summary judgment are insufficient as a matter of law. See Guzman v. Carnevale, 964 S.W.2d
311, 314 (Tex. App.--Corpus Christi 1998, no pet.).


Enforceability of the Waiver

 Castellow asserts that the waiver undermines the purpose and structure of the
Workers' Compensation Act and is therefore contrary to public policy. See Tex. Lab. Code Ann.
§§ 401.001-418.002 (West 1996 & Supp. 2000). She states that because Swiftex's Plan provides
fewer benefits to the injured worker while granting the employer greater immunity from liability
than the Act, the waiver provision should be held unenforceable as against public policy. Swiftex,
on the other hand, maintains that the waiver is "purely a matter of contract and the rights and
obligations are to be measured by the contract."

 A court can declare a contract void as against public policy and refuse to enforce
it. Williams v. Patton, 821 S.W.2d 141, 147-48 & n.11 (Tex. 1991) (Doggett, J., concurring)
(citing cases in which courts found contracts to be void as contrary to public policy). Agreements
exempting a party from future liability for negligence are generally recognized as valid except
where, because of the relationship of the parties, the exculpatory provision is contrary to public
policy or the public interest. Crowell v. Housing Auth., 495 S.W.2d 887, 889 (Tex. 1973) ("It
is generally held, for example, that a contract exempting an employer from all liability for
negligent injury of his employees in the course of their employment is void as against public
policy."). The State's public policy is expressed through its statutes. See National County Mut.
Fire Ins. Co. v. Johnson, 879 S.W.2d 1, 8 (Tex. 1993). We begin our analysis by noting that we
must liberally construe the workers' compensation statute in favor of the injured worker. See
Kroger Co. v. Keng, 23 S.W.3d 347, 349 (Tex. 2000).

 Prior to 1913, when the first workers' compensation legislation was enacted in
Texas, employees injured on the job were often denied recovery. Texas Workers' Comp. Comm'n
v. Garcia, 893 S.W.2d 504, 510 (Tex. 1995). Employees found that negligence was difficult to
prove and that employers enjoyed complete defenses in the common-law doctrines of contributory
negligence, assumption of the risk, and negligence by a fellow employee. Id. The first Workers'
Compensation Act replaced the common-law negligence remedy with limited, but more certain,
benefits for injured workers. Id. at 510-11. Employees could recover reduced benefits without
proving fault by their employers or facing common-law defenses. Id. at 511. "In exchange, the
employer's total liability for an injury was substantially limited." Id. Employers could opt out
of the system but were discouraged from doing so, as the Act abolished all traditional common-law
defenses for nonsubscribers. Id. Employees of nonsubscribers retained their common-law rights. 
Id. Although portions of the Act have been amended, this quid pro quo scheme has remained
unchanged since 1913. Id.

 The core concept of the Act is the assurance that injured employees either have
access to the courts to seek redress for wrongs or receive adequate substitute remedies. See id.
at 520-21. The Texas Constitution provides an "open courts" guarantee: "All courts shall be open,
and every person for an injury done him, in his lands, goods, person or reputation, shall have
remedy by due course of law." Tex. Const. art. I, § 13. Legislative action that withdraws
common-law remedies for well-established, common-law causes of action satisfies the
constitutional open-courts guarantee only when it is reasonable in substituting other remedies.(1) 
Garcia, 893 S.W.2d at 520; see also Sax v. Votteler, 648 S.W.2d 661, 667 (Tex. 1983). The quid
pro quo established in the Workers' Compensation Act provides an adequate substitute by giving
injured employees a satisfactory and certain, although limited, recovery. Garcia, 893 S.W.2d at
521. Even certain benefits, however, can be so inadequate as to run afoul of the open-courts
doctrine. Id. The supreme court held that the benefits provided by the Act--including full lifetime
medical coverage, temporary benefits replacing a substantial part of lost wages during
convalescence, impairment benefits, and long-term wage replacement for those with at least
moderately severe impairments--satisfied the open-courts guarantee. Id.

 The Act was enacted primarily for the benefit and protection of employees. 
Hazelwood v. Mandrell Indus. Co., 596 S.W.2d 204, 206 (Tex. Civ. App.--Houston [1st Dist.]
1980, writ ref'd n.r.e.) (citing Woolsey v. Panhandle Ref. Co., 116 S.W.2d 675 (Tex. 1938)). 
Although the Act allows employers to opt out, employees of nonsubscribers remain protected
because the Act abolishes all common-law defenses available to these nonsubscribing employers. 
See Garcia, 893 S.W.2d at 511. Indeed, a voluntary waiver in which the nonsubscribing
employer limits its own liability and yet retains its common-law defenses has been held void as
against public policy. Hazelwood, 596 S.W.2d at 206.

 Swiftex maintains that the waiver executed by Castellow, accepting benefits under
its Plan in place of her common-law remedies, is not against public policy. Generally, voluntary
workers' compensation is a matter of contract. Reyes, 995 S.W.2d at 727. Contracts executed
after an injury occurs that liquidate claims and limit the employers' liability have been held not
contrary to public policy. Memorial Med. Ctr. v. Keszler, 943 S.W.2d 433, 435 (Tex. 1997);
Martinez v. IBP, Inc., 961 S.W.2d 678, 684 (Tex. App.--Amarillo 1998, pet. denied); Tigrett v.
Heritage Bldg. Co., 533 S.W.2d 65, 70 (Tex. Civ. App.--Texarkana 1976, writ ref'd n.r.e.). 
Similarly, contracts that measured recovery for industrial injuries according to the measure of
benefits provided by the Workers' Compensation Act have been held valid and enforceable. 
Tigrett, 533 S.W.2d at 70; Employers Mut. Cas. Co. v. Poorman, 428 S.W.2d 698, 700-01 (Tex.
Civ. App.--San Antonio 1968, writ ref'd n.r.e.); United States Fid. & Guar. Co. v. Valdez, 390
S.W.2d 485, 489 (Tex. Civ. App.--Houston 1965, writ ref'd n.r.e.).

 Conversely, voluntary workers' compensation contracts have been held void as
against public policy when they reduced either statutory or common-law rights of employees. In
1916, the supreme court found a contract in which the employee expressly assumed the risk of
injury "so abhorrent that it is held to be in violation of public policy and void." Barnhart v.
Kansas City, M. & O. Ry. Co. of Tex., 184 S.W. 176, 179 (Tex. 1916) (holding that transferring
by contract the burden which rested in law on the employer to the "shoulders of its employee" was
unjust). A contract in which the employer retained its common-law defenses was held invalid as
against public policy in Hazelwood. Hazelwood, 596 S.W.2d at 206. Finally, a contract in which
the employee waived not only negligence claims, but intentional and gross negligence claims that
are retained under the Workers' Compensation Act, was held in violation of public policy and
therefore, void and unenforceable. Reyes, 995 S.W.2d at 729.

 For support, Swiftex cites several cases in which the courts have held that waivers
associated with voluntary benefit plans were valid and enforceable contracts. See Wolfe v.
C.S.P.H., Inc., 24 S.W.3d 641, 645 (Tex. App.--Dallas 2000, no pet.); Lawrence v. CDB Servs.,
Inc., 16 S.W.3d 35, 44 (Tex. App.--Amarillo 2000, pet. granted); Lambert v. Affiliated Foods,
Inc., 20 S.W.3d 1, 6 (Tex. App.--Amarillo 1999, pet. granted). In Lawrence, the seventh court
of appeals first looked to contract law to hold that agreements releasing a party from responsibility
for future acts of negligence "have long been part of otherwise valid contracts in Texas," and that
such waivers "are not in and of themselves in violation of public policy." Lawrence, 16 S.W.3d
at 41. That court then turned to the Workers' Compensation Act to note that "in plain language"
the legislature described its intent that "an employee can waive specified common law rights in
exchange for some level of fixed benefits to be provided without regard to fault in the event of an
injury on the job." Id. at 42. The court emphasized that this policy "has remained continuously
manifested in the express language of the Act." Id.

 It is no surprise that this quid pro quo policy has remained unchanged over time,
because the Act would be unconstitutional if it did not substitute an adequate remedy for the
employee's common-law right to sue her employer. See Garcia, 893 S.W.2d at 521. The 
fairness of this trade-off was precisely the issue addressed by the supreme court when it considered
the open-courts challenge to the revised workers' compensation scheme in Garcia. Id. Should
this delicate balance be disturbed by depriving the employee of the right to sue for gross
negligence, for example, the open-courts guarantee would likely be violated. See Reyes, 995
S.W.2d at 729.

 We agree with the Lawrence court that the quid pro quo expressed in the Act
represents the public policy intended by the legislature. We disagree that employers may, by
contract, establish their own private quid pro quo policy and ignore the carefully constructed
benefit level approved by the legislature. Contracts that afford to the employee fewer benefits than
the statutory scheme, or require giving up more substantial legal remedies than the Act, run the
danger of contravening public policy and violating the employee's open-court rights.

 Swiftex contends that the Act prevents nonsubscribing employers from asserting
certain common-law defenses, and waiver is not listed among them. See Tex. Lab. Code Ann.
§ 406.033 (West 1996). The pertinent sections of the Act are as follows:


(a) In an action against an employer who does not have workers' compensation
insurance coverage to recover damages for personal injuries or death sustained
by an employee in the course and scope of the employment, it is not a defense
that:


 (1) the employee was guilty of contributory negligence;


 (2) the employee assumed the risk of injury or death; or


 (3) the injury or death was caused by the negligence of a fellow employee.


(b) This section does not reinstate or otherwise affect the availability of defenses
at common law, including the defenses described by Subsection (a).


(c) The employer may defend the action on the ground that the injury was caused:


 (1) by an act of the employee intended to bring about the injury; or


 (2) while the employee was in a state of intoxication.



Id.

 The cardinal rule of statutory construction is to ascertain and follow the legislature's
intent. Citizens Bank v. First State Bank, Hearne, 580 S.W.2d 344, 348 (Tex. 1979). We
ascertain that intent by initially looking at the language used in the statute. Jones v. Del Andersen
& Assocs., 539 S.W.2d 348, 350 (Tex. 1976). The words in the statute should be interpreted
according to their ordinary meaning; they are not to be interpreted in an exaggerated, forced, or
strained manner. Howell v. Mauzy, 899 S.W.2d 690, 704 (Tex. App.--Austin 1994, writ denied). 
We need not analyze extrinsic evidence of legislative intent if the intent is apparent from the
language of the statute. Minton v. Frank, 545 S.W.2d 442, 445 (Tex. 1976). The goal of
statutory construction is to give effect to the intent of the legislature. Sorokolit v. Rhodes, 889
S.W.2d 239, 241 (Tex. 1994). If language in a statute is unambiguous, this Court must seek the
intent of the legislature as found in the plain and common meaning of the words and terms used. 
Id.

 We presume that a statute passed by the legislature is constitutional. HL Farm
Corp. v. Self, 877 S.W.2d 288, 290 (Tex. 1994). If possible, we must construe statutes to avoid
constitutional infirmities. See Texas State Bd. of Barber Exam'rs v. Beaumont Barber Coll., Inc.,
454 S.W.2d 729, 732 (Tex. 1970). Finally, we must reject interpretations of a statute that defeat
the purpose of the legislation so long as another reasonable interpretation exists. See Citizens
Bank, 580 S.W.2d at 348.

 Swiftex relies on the seventh court of appeals' reasoning that section 406.003(a)
provides evidence that the legislature did not intend to deprive employers of the defense of waiver. 
See Lawrence, 16 S.W.3d at 42-43. Swiftex argues that if we hold this waiver void, we will be
judicially creating a fourth prohibited defense under section 406.033(a). See Tex. Lab. Code Ann.
§ 406.033(a); Lambert, 20 S.W.3d at 6. "[E]ven though waiver is also a common law defense,
it is not included in the list of prohibited defenses to a common law action for personal injuries
brought by an employee." Lambert, 20 S.W.3d at 6 (citation omitted). The court stated that
because holding the waiver void on public policy grounds "would constitute a judicial creation of
subsection (4) . . . we are constrained to refrain from invading the legislative field." Id. 

 The seventh court of appeals noted that section 406.035 provides that an agreement
by an employee to waive the right to compensation is void.(2) Lawrence, 16 S.W.3d at 43; see also
Tex. Lab. Code Ann. § 406.035 (West 1996). Consequently, the court reasoned, when the
legislature deems certain contractual provisions void, it knows how to prohibit them. Because the
language of section 406.033 does not prohibit an employer from relying on a contractual waiver,
the Amarillo court declined to hold such a waiver void as against public policy. Lawrence, 16
S.W.3d at 43-44. With all due respect, we read the statute differently.

 The supreme court explained that section 406.033(c) identifies the two defenses
upon which employers may rely: that the employee intended to bring about the injury, or the
injury occurred while the employee was intoxicated. Tex. Lab. Code Ann. § 406.033(c); Kroger,
23 S.W.3d at 350. Section 406.033(c) does not include a third defense, that the employee signed
a contract agreeing to waive all common-law remedies and to accept benefits under a voluntary
plan as a sole remedy for a job-related injury.

 The term "waiver" is simply not found in section 406.033, either as a prohibited
defense or as a permitted defense. We need not read it into the statute in either subsection to
determine if the waiver at issue here is void because it violates public policy. The structure of
section 406.033, nonetheless, provides insight to the important legislative intent of delineating
"explicitly the structure of an employee's personal-injury action against his or her nonsubscribing
employer."(3) Kroger, 23 S.W.3d at 350-51. 

 In Kroger, the supreme court determined whether section 406.033(a) prohibited the
common-law defense of comparative responsibility even though it was not included in the list of
prohibited defenses. The court explained that the legislature intended to encourage employers to
obtain workers' compensation insurance; therefore, it enacted section 406.033 as a "penalty
provision" that penalizes nonsubscribers by precluding them from asserting certain common-law
defenses in their employees' personal-injury actions. Id. at 350.

 Comparative responsibility also is not listed in section 406.033(c) as an available
defense. Id.; cf. Tex. Lab. Code Ann. § 406.033(c). The supreme court refused to add it to
subsection (c) stating, "[t]o construe section 406.033 [as adding comparative responsibility as an
available defense] would be to supply by implication restrictions on an employee's rights that are
not found in section 406.033's plain language." Kroger, 23 S.W.3d at 351. The supreme court
held that an employer could not assert comparative responsibility as a defense, noting that
measuring comparative responsibility necessitates a preliminary finding that the plaintiff was
contributorily negligent. Id. The court stated, "[B]y precluding contributory negligence as a
defense the Legislature intended that an employee's fault would neither defeat nor diminish his or
her recovery. . . . That is the penalty employers pay for opting not to subscribe to workers'
compensation insurance." Id. at 352 (citation omitted).

 Similarly, we cannot by implication read waiver into section 406.003 as a defense
that is available to employers. Because we must not construe the statute in a way that would
render it unconstitutional, we refuse to read section 406.033 as holding that every waiver
associated with every private benefit plan is a defense available to employers sued for negligence. 
See Citizens Bank, 580 S.W.2d at 348. To construe the statute to permit a waiver that reduces the
benefits of an employee or increases the employer's immunity would upset the delicate trade-off
that has been held constitutional in the face of the open-courts challenge to the workers'
compensation scheme. See Garcia, 893 S.W.2d at 520-21. Further, such a reading would
undermine the purpose of section 406.033--to penalize employers who opt out of subscribing to
workers' compensation insurance. See Kroger, 23 S.W.3d at 349.

 The public interest in protecting employees, as embodied in the Act, requires that
voluntary contracts, such as the one here, be in accord with the intent of the legislature as reflected
in the Act. See Hazelwood, 596 S.W.2d at 206. Castellow maintains that the Plan offers fewer
benefits than those provided by the Act. Castellow also contends that the waiver she signed
provides Swiftex more immunity from liability than that granted by the Act. We must compare
the provisions of the Plan with similar provisions in the Act to determine whether the waiver
violates public policy. See Reyes, 995 S.W.2d at 728.

 The Workers' Compensation Act provides medical benefits for health care that
cures or relieves the injured employee of the effects of the injury, that promotes recovery, or that
enhances the ability of the employee to return to or retain employment. Tex. Lab. Code Ann.
§ 408.021(a) (West 1996). Under Swiftex's Plan, medical benefits terminate at the point--which
the Plan refers to as "maximum rehabilitative capacity"--when Swiftex's designated physician
determines the injured employee will not improve substantially as a result of additional medical
treatment or physical therapy.(4)

 The Act provides wage replacement during convalescence based on seventy percent
of the difference between the claimant's average weekly wage and the post-injury weekly earnings
until the date of maximum medical improvement.(5) Tex. Lab. Code Ann. §§ 408.102(a),
.103(a)(1) (West 1996). Swiftex's Plan provides wage replacement according to the following
formulas: for the first week, eighty-five percent x average hours x average wage; thereafter,
seventy-five percent of the average hourly wage. The benefits terminate when the employee
reaches maximum rehabilitative capacity, when the treating physician releases the employee to
return to either full or part-time work, either regular or modified duty, or when the Plan
administrator determines that the benefits should be terminated in accordance with the Plan. The
Act also provides impairment income, supplemental income, and lifetime income benefits. Tex.
Lab. Code Ann. §§ 408.121, .142 (West 1996) & § 408.161 (West Supp. 2000). The Plan offers
no comparable benefits.

 The Act allows "recovery of exemplary damages by the surviving spouse or heirs
of the body of a deceased employee whose death was caused by an intentional act or omission of
the employer or by the employer's gross negligence." Tex. Lab. Code Ann. § 408.001(b) (West
1996). The Plan, conversely, prohibits death claims caused by gross negligence. The fact that
this provision does not apply to Castellow is not determinative of whether the waiver is
unenforceable. See Hazelwood, 596 S.W.2d at 206. "In considering whether a contract is
contrary to public policy, the test is whether the tendency of the agreement is injurious to the
public good, not whether its application in a particular case results in actual injury." Id. Here,
we consider that the Act provides injured employees access to the courts when death results from
an intentional act or gross negligence, whereas the Plan precludes all claims of gross negligence.

 When the balance developed by the legislature is "tipped so that the employee's
benefits under the statute are substantially reduced, the clear intent of the legislature is thwarted." 
See id.; accord Reyes, 995 S.W.2d at 729. As in Reyes, the Plan enables Swiftex to enjoy all of
the advantages, and even greater advantages, of subscriber status, without providing subscriber-level benefits to employees. See id. A waiver whereby an employee foregoes more common-law
remedies than are surrendered under the Act, in exchange for fewer benefits than are afforded by
the Act, must be declared invalid as against public policy. Id. We sustain Castellow's single point
of error.


CONCLUSION

 Because the waiver executed by Castellow is void as against public policy, the trial
court erred in granting summary judgment in favor of Swiftex. We therefore reverse the trial
court's judgment and remand the cause to that court for further proceedings.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Reversed and Remanded

Filed: December 7, 2000

Publish


1. Common-law remedies also may be restricted when the limitation is a reasonable exercise
of the police power in the interest of the general welfare, or the legislature has left a reasonable
alternative at common law. Texas Workers' Comp. Comm'n v. Garcia, 893 S.W.2d 504, 520
(Tex. 1995); Liggett v. Blocher, 849 S.W.2d 846, 851 (Tex. App.--Houston [1st Dist.] 1993, no
writ).
2. Section 406.035 applies only to employees of subscribing employers. Reyes v. Storage &
Processors, Inc., 995 S.W.2d 722, 726 (Tex. App.--San Antonio 1999, pet. denied).
3. Subsection (a) lists defenses that are unavailable to an employer; subsection (c) dictates the
defenses that an employer may use; and subsection (d) provides the employee's burden of proof. 
Tex. Lab. Code Ann. § 406.033(a), (c), (d) (West 1996); Kroger Co. v. Keng, 23 S.W.3d 347,
351 (Tex. 2000). The seventh court of appeals contends that the addition of subsection (b) is
evidence that the legislature revisited the issue of an employee's common-law rights, and did not
expressly void or prohibit these contractual provisions. Lawrence v. CDB Servs., Inc., 16 S.W.3d
35, 43-44 (Tex. App.--Amarillo 2000, pet. granted); Tex. Lab. Code Ann. § 406.033(b) (West
1996). That section, however, states that it "does not reinstate or otherwise affect the availability
of defenses at common law." Tex. Lab. Code Ann. § 406.033(b). We read this to mean that the
common-law defenses prohibited under subsection (a) and those allowed in subsection (c) remain
unchanged.
4. The Act relies on a similar point in time, "maximum medical improvement," in determining
certain benefits, but not medical benefits. Tex. Lab. Code Ann. § 401.011(30) (West Supp. 2000)
& § 408.101(a) (West 1996). Cf. id. § 408.021 (West 1996).
5. Temporary income benefits may also be measured as equal to seventy-five percent of the
difference between the claimant's average weekly wage and the post-injury weekly earnings when
the employee earns less than $8.50 an hour. Tex. Lab. Code Ann. § 408.103(a)(2) (West 1996). 
"Maximum medical improvement" is defined as the earlier of:


(A) the earliest date after which, based on reasonable medical probability,
further material recovery from or lasting improvement to an injury can
no longer reasonably be anticipated; or


(B) the expiration of 104 weeks from the date on which income benefits
begin to accrue; or


(C) the date determined [by statute for spinal surgery].


Id. § 401.011(30). 



1996). The Plan, conversely, prohibits death claims caused by gross negligence. The fact that
this provision does not apply to Castellow is not determinative of whether the waiver is
unenforceable. See Hazelwood, 596 S.W.2d at 206. "In considering whether a contract is
contrary to public policy, the test is whether the tendency of the agreement is injurious to the
public good, not whether its application in a particular case results in actual injury." Id. Here,
we consider that the Act provides injured employees access to the courts when death results from
an intentional act or gross negligence, whereas the Plan precludes all claims of gross negligence.

 When the balance developed by the legislature is "tipped so that the employee's
benefits under the statute are substantially reduced, the clear intent of the legislature is thwarted." 
See id.; accord Reyes, 995 S.W.2d at 729. As in Reyes, the Plan enables Swiftex to enjoy all of
the advantages, and even greater advantages, of subscriber status, without providing subscriber-level benefits to employees. See id. A waiver whereby an employee foregoes more common-law
remedies than are surrendered under the Act, in exchange for fewer benefits than are afforded by
the Act, must be declared invalid as against public policy. Id. We sustain Castellow's single point
of error.


CONCLUSION

 Because the waiver executed by Castellow is void as against public policy, the trial
court erred in granting summary judgment in favor of Swiftex. We therefore reverse the trial
court's judgment and remand the cause to that court for further proceedings.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Reversed and Remanded

Filed: December 7, 2000

Publish


1. Common-law remedies also may be restricted when the limitation is a reasonable exercise
of the police power in the interest of the general welfare, or the legislature has left a reasonable
alternative at common law. Texas Workers' Comp. Comm'n v. Garcia, 893 S.W.2d 504, 520
(Tex. 1995); Liggett v. Blocher, 849 S.W.2d 846, 851 (Tex. App.--Houston [1st Dist.] 1993, no
writ).
2. Section 406.035 applies only to employees of subscribing employers. Reyes v. Storage &
Processors, Inc., 995 S.W.2d 722, 726 (Tex. App.--San Antonio 1999, pet. denied).
3. Subsection (a) lists defenses that are unavailable to an employer; subsection (c) dictates the
defenses that an employer may use; and subsection (d) provides the employee's burden of proof. 
Tex. Lab. Code Ann. § 406.033(a), (c), (d) (West 1996); Kroger Co. v. Keng, 23 S.W.3d 347,
351 (Tex. 2000). The seventh court of appeals contends that the addition of subsection (b) is
evidence that the legislature revisited the issue of an employee's common-law rights, and did not
expressly void or prohibit these contractual provisions. Lawrence v. CDB Servs., Inc., 16 S.W.3d
35, 43-44 (Tex. App.--Amarillo 2000, pet. granted); Tex. Lab. Code Ann. § 406.033(b) (West
1996). That section, however, states that it "does not reinstate or otherwise affect the availability
of defenses at common law." Tex. Lab. Code Ann. § 406.033(b). We read this to mean that the
common-law defenses prohibited under subsection (a) and those allowed in subsection (c) remain
unchanged.
4. The Act relies on a similar point in time, "maximum medical improvement," in determining
certain benefits, but not medical benefits. Tex. Lab. Code Ann. § 401.011(30) (West Supp. 2000)
& § 408.101(a) (West 1996). Cf. id. § 408.021 (West 1996).
5. Temporary income benefits may also be measured as equal to seventy-five percent of the
difference between the claimant's average weekly wage and the post-injury weekly earnings when
the employee earns less than $8.50 an hour. Tex. Lab. Code Ann. § 408.103(a)(2) (West 1996). 
"Maximum medical improvement" is defined as the earlier of:


(A) the earliest date after