**Helen F. CASTELLOW, Appellant,**

v.

**SWIFTEX MANUFACTURING CORPORATION, Individually and d/b/a Swiftex, Inc., Appellee.**

No. 03–00–00287–CV.

Court of Appeals of Texas, Austin.

Dec. 7, 2000.

Rehearing Overruled Jan. 19, 2001.

---

Derek L. Davis, Byrd, Davis, & Eisenberg, L.L.P., Austin, for appellant.

Jeffrey A. Hagleman, Martin & Associates, P.C., Austin, for appellee.

Before Chief Justice ABOUSSIE,
Justices B.A. SMITH and PATTERSON.

BEA ANN SMITH, Justice.

Appellant Helen F. Castellow sued her employer, appellee Swiftex Manufacturing Corporation (Swiftex), for negligence that proximately caused injuries she incurred in the course of her employment. Swiftex is not a subscriber to workers' compensation insurance but offers a private benefit plan that requires an employee to waive her common-law remedies for the employer's negligence in causing on-the-job injuries. The trial court granted Swiftex's motion for summary judgment which asserted waiver, ratification, and estoppel. The sole issue appellant raises on appeal is whether the waiver Castellow signed is unenforceable because it violates public policy. We hold that the waiver thwarts the intent of the legislature embodied in the statutory workers' compensation scheme and reverse the trial court's summary judgment in favor of Swiftex.

## FACTS AND PROCEDURAL HISTORY

Castellow was hired in January 1998. Swiftex did not subscribe to workers' compensation insurance but instead offered its own "Employee Safety Program Benefit Plan" (the Plan). The parties stipulate that participation in the Plan was volun-

tary but required a waiver of all common-law remedies against Swiftex for on-the-job injuries. Castellow elected to participate in the Plan and signed the waiver, relinquishing her right to sue Swiftex or its employees for injuries or death sustained in the course of her employment that resulted from the sole or concurrent negligence of Swiftex. The waiver provided in bold language, "My only remedy will be to receive benefits under the Plan."

In February 1999, Castellow was injured after tripping over a cord in her work area, which she described as "small and cramped." Castellow made a claim and received medical and wage replacement benefits under the Plan. She has never paid back any of these benefits.

Ignoring the terms of the waiver, Castellow filed this suit in June 1999 alleging that Swiftex's negligence in failing to provide a safe work environment proximately caused her injuries. In September, Swiftex filed a motion for summary judgment asserting that Castellow's claims were barred because she had agreed to waive her claims by voluntarily electing to participate in the Plan; that she ratified the waiver by accepting and not returning, or offering to return, the benefits she received; and that she is estopped from adopting an inconsistent position by suing Swiftex.

Castellow did not file a response or appear at the summary-judgment hearing. The trial court granted Swiftex's motion on November 3, 1999, without stating its grounds. Castellow filed a response to the motion for summary judgment on December 16. On January 6, 2000, Castellow appealed the court's granting summary judgment, and on January 24, she filed a motion for new trial.

## DISCUSSION

■ Because the propriety of a summary judgment is a question of law, we review the trial court's decision *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994); *Texas Dep't of Ins. v.*

*American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex.App.—Austin 1999, no pet.). The standards for review of a summary judgment are well-established: (1) the movant must show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and (3) the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Swiftex has the burden of showing that Castellow could not succeed on any theory pleaded. *See San Antonio Express News v. Dracos*, 922 S.W.2d 242, 247 (Tex. App.—San Antonio 1996, no writ). When the trial court's summary judgment does not specify the grounds relied upon, we must affirm the court's judgment if any of the summary-judgment grounds is meritorious. *Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex.1999).

■ Castellow's sole challenge to the summary judgment in Swiftex's favor is her assertion that the waiver she signed is unenforceable because its terms are contrary to public policy. Whether an agreement violates public policy is a question of law, which we review *de novo*. *Reyes v. Storage & Processors, Inc.*, 995 S.W.2d 722, 726 (Tex.App.—San Antonio 1999, pet. denied). Castellow concedes that if the waiver is not contrary to public policy, it is otherwise enforceable.

### Preservation of Error

■ Swiftex argues that Castellow failed to preserve error in two ways: first, by failing to appeal all three points on which the summary judgment could have been based; and second, by not presenting the issue on appeal to the trial court prior to its ruling on the motion for summary judgment.

Swiftex maintains that the summary judgment must be affirmed because Castellow failed to attack every possible ground upon which the trial court based its summary judgment and she did not assert a general assignment of error in granting the summary judgment. *See Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970). General assignment of error, or specific attack on each ground on which the summary judgment was possibly based, is not necessary here because disposition of the public policy issue necessarily disposes of the entire case. If the waiver contravenes public policy and is unenforceable, then Swiftex's ratification and estoppel arguments fail. *See Peniche v. Aeromexico,* 580 S.W.2d 152, 157 (Tex.Civ. App.—Houston [1st Dist.] 1979, no writ) ("It is well settled that an illegal contract cannot be ratified or saved by estoppel."). If the waiver is enforceable, then Castellow concedes that waiver, estoppel, and ratification will defeat her cause of action. *See Reyes,* 995 S.W.2d at 726. Castellow clearly states her issue on appeal and concisely argues that the waiver is unenforceable as a matter of public policy. This is sufficient to preserve this issue for our review. *See id.* at 725.

■ Next, Swiftex argues that Castellow failed to present to the trial court, in writing, her contention that the waiver is unenforceable prior to the hearing on Swiftex's motion for summary judgment. The non-movant must expressly present to the trial court, by written answer or response to the motion, those issues that would defeat the movant's right to a summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 679 (Tex. 1979). If the non-movant fails to do so, she may not later assign those issues as error on appeal. *Id.* "[B]oth the reasons for the summary judgment and the objections to it must be in writing before the trial judge at the hearing." *Id.* at 677. The exception to this rule is when "the grounds expressly presented to the trial court by the movant's motion are insuffi-

cient *as a matter of law* to support summary judgment." *Id.* at 678.

In her motion for new trial, Castellow asserted that, as a matter of law, the waiver she signed is unenforceable because it offends public policy. Her motion for new trial was overruled by operation of law. *See* Tex.R.Civ.P. 329b(b). She was not required to file an answer to the motion for summary judgment to preserve her contention that the grounds for summary judgment are insufficient as a matter of law. *See Guzman v. Carnevale,* 964 S.W.2d 311, 314 (Tex.App.—Corpus Christi 1998, no pet.).

### Enforceability of the Waiver

■ Castellow asserts that the waiver undermines the purpose and structure of the Workers' Compensation Act and is therefore contrary to public policy. *See* Tex.Lab.Code Ann. §§ 401.001–418.002 (West 1996 & Supp.2000). She states that because Swiftex's Plan provides fewer benefits to the injured worker while granting the employer greater immunity from liability than the Act, the waiver provision should be held unenforceable as against public policy. Swiftex, on the other hand, maintains that the waiver is "purely a matter of contract and the rights and obligations are to be measured by the contract."

■ A court can declare a contract void as against public policy and refuse to enforce it. *Williams v. Patton,* 821 S.W.2d 141, 147–48 & n. 11 (Tex.1991) (Doggett, J., concurring) (citing cases in which courts found contracts to be void as contrary to public policy). Agreements exempting a party from future liability for negligence are generally recognized as valid except where, because of the relationship of the parties, the exculpatory provision is contrary to public policy or the public interest. *Crowell v. Housing Auth.,* 495 S.W.2d 887, 889 (Tex.1973) ("It is generally held, for example, that a contract exempting an employer from all liability for negligent injury of his employees in the

course of their employment is void as against public policy."). The State's public policy is expressed through its statutes. *See National County Mut. Fire Ins. Co. v. Johnson,* 879 S.W.2d 1, 8 (Tex.1993). We begin our analysis by noting that we must liberally construe the workers' compensation statute in favor of the injured worker. *See Kroger Co. v. Keng,* 23 S.W.3d 347, 349 (Tex.2000).

Prior to 1913, when the first workers' compensation legislation was enacted in Texas, employees injured on the job were often denied recovery. *Texas Workers' Comp. Comm'n v. Garcia,* 893 S.W.2d 504, 510 (Tex.1995). Employees found that negligence was difficult to prove and that employers enjoyed complete defenses in the common-law doctrines of contributory negligence, assumption of the risk, and negligence by a fellow employee. *Id.* The first Workers' Compensation Act replaced the common-law negligence remedy with limited, but more certain, benefits for injured workers. *Id.* at 510–11. Employees could recover reduced benefits without proving fault by their employers or facing common-law defenses. *Id.* at 511. "In exchange, the employer's total liability for an injury was substantially limited." *Id.* Employers could opt out of the system but were discouraged from doing so, as the Act abolished all traditional common-law defenses for nonsubscribers. *Id.* Employees of nonsubscribers retained their common-law rights. *Id.* Although portions of the Act have been amended, this *quid pro quo* scheme has remained unchanged since 1913. *Id.*

▆▆▆▆ The core concept of the Act is the assurance that injured employees either have access to the courts to seek redress for wrongs or receive adequate substitute remedies. *See id.* at 520–21. The Texas Constitution provides an "open

courts" guarantee: "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." Tex. Const. art. I, § 13. Legislative action that withdraws common-law remedies for well-established, common-law causes of action satisfies the constitutional open-courts guarantee only when it is reasonable in substituting other remedies.[1] *Garcia,* 893 S.W.2d at 520; *see also Sax v. Votteler,* 648 S.W.2d 661, 667 (Tex.1983). The *quid pro quo* established in the Workers' Compensation Act provides an adequate substitute by giving injured employees a satisfactory and certain, although limited, recovery. *Garcia,* 893 S.W.2d at 521. Even certain benefits, however, can be so inadequate as to run afoul of the open-courts doctrine. *Id.* The supreme court held that the benefits provided by the Act—including full lifetime medical coverage, temporary benefits replacing a substantial part of lost wages during convalescence, impairment benefits, and long-term wage replacement for those with at least moderately severe impairments—satisfied the open-courts guarantee. *Id.*

▆▆▆▆ The Act was enacted primarily for the benefit and protection of employees. *Hazelwood v. Mandrell Indus. Co.,* 596 S.W.2d 204, 206 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) (citing *Woolsey v. Panhandle Ref. Co.,* 131 Tex. 449, 116 S.W.2d 675 (1938)). Although the Act allows employers to opt out, employees of nonsubscribers remain protected because the Act abolishes all common-law defenses available to these nonsubscribing employers. *See Garcia,* 893 S.W.2d at 511. Indeed, a voluntary waiver in which the nonsubscribing employer limits its own liability and yet retains its common-law defenses has been held void as against public policy. *Hazelwood,* 596 S.W.2d at 206.

*Workers' Comp. Comm'n v. Garcia,* 893 S.W.2d 504, 520 (Tex.1995); *Liggett v. Blocher,* 849 S.W.2d 846, 851 (Tex.App.—Houston [1st Dist.] 1993, no writ).

---

1. Common-law remedies also may be restricted when the limitation is a reasonable exercise of the police power in the interest of the general welfare, or the legislature has left a reasonable alternative at common law. *Texas*

Swiftex maintains that the waiver executed by Castellow, accepting benefits under its Plan in place of her common-law remedies, is not against public policy. Generally, voluntary workers' compensation is a matter of contract. *Reyes,* 995 S.W.2d at 727. Contracts executed *after* an injury occurs that liquidate claims and limit the employers' liability have been held not contrary to public policy. *Memorial Med. Ctr. v. Keszler,* 943 S.W.2d 433, 435 (Tex.1997); *Martinez v. IBP, Inc.,* 961 S.W.2d 678, 684 (Tex.App.—Amarillo 1998, pet. denied); *Tigrett v. Heritage Bldg. Co.,* 533 S.W.2d 65, 70 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.). Similarly, contracts that measured recovery for industrial injuries according to the measure of benefits provided by the Workers' Compensation Act have been held valid and enforceable. *Tigrett,* 533 S.W.2d at 70; *Employers Mut. Cas. Co. v. Poorman,* 428 S.W.2d 698, 700–01 (Tex.Civ.App.—San Antonio 1968, writ ref'd n.r.e.); *United States Fid. & Guar. Co. v. Valdez,* 390 S.W.2d 485, 489 (Tex.Civ.App.—Houston 1965, writ ref'd n.r.e.).

Conversely, voluntary workers' compensation contracts have been held void as against public policy when they reduced either statutory or common-law rights of employees. In 1916, the supreme court found a contract in which the employee expressly assumed the risk of injury "so abhorrent that it is held to be in violation of public policy and void." *Barnhart v. Kansas City, M. & O. Ry. Co. of Tex.,* 107 Tex. 638, 184 S.W. 176, 179 (1916) (holding that transferring by contract the burden which rested in law on the employer to the "shoulders of its employee" was unjust). A contract in which the employer retained its common-law defenses was held invalid as against public policy in *Hazelwood. Hazelwood,* 596 S.W.2d at 206. Finally, a contract in which the employee waived not only negligence claims, but intentional and gross negligence claims that are retained under the Workers' Compensation Act, was held in violation of public policy and

therefore, void and unenforceable. *Reyes,* 995 S.W.2d at 729.

For support, Swiftex cites several cases in which the courts have held that waivers associated with voluntary benefit plans were valid and enforceable contracts. *See Wolfe v.C.S.P.H., Inc.,* 24 S.W.3d 641, 645 (Tex.App.—Dallas 2000, no pet.); *Lawrence v. CDB Servs., Inc.,* 16 S.W.3d 35, 44 (Tex.App.—Amarillo 2000, pet. granted); *Lambert v. Affiliated Foods, Inc.,* 20 S.W.3d 1, 6 (Tex.App.—Amarillo 1999, pet. granted). In *Lawrence,* the seventh court of appeals first looked to contract law to hold that agreements releasing a party from responsibility for future acts of negligence "have long been part of otherwise valid contracts in Texas," and that such waivers "are not in and of themselves in violation of public policy." *Lawrence,* 16 S.W.3d at 41. That court then turned to the Workers' Compensation Act to note that "in plain language" the legislature described its intent that "an employee can waive specified common law rights in exchange for some level of fixed benefits to be provided without regard to fault in the event of an injury on the job." *Id.* at 42. The court emphasized that this policy "has remained continuously manifested in the express language of the Act." *Id.*

It is no surprise that this *quid pro quo* policy has remained unchanged over time, because the Act would be unconstitutional if it did not substitute an adequate remedy for the employee's common-law right to sue her employer. *See Garcia,* 893 S.W.2d at 521. The fairness of this trade-off was precisely the issue addressed by the supreme court when it considered the open-courts challenge to the revised workers' compensation scheme in *Garcia. Id.* Should this delicate balance be disturbed by depriving the employee of the right to sue for gross negligence, for example, the open-courts guarantee would likely be violated. *See Reyes,* 995 S.W.2d at 729.

We agree with the *Lawrence* court that the *quid pro quo* expressed in the Act represents the public policy intended by

the legislature. We disagree that employers may, by contract, establish their own private *quid pro quo* policy and ignore the carefully constructed benefit level approved by the legislature. Contracts that afford to the employee fewer benefits than the statutory scheme, or require giving up more substantial legal remedies than the Act, run the danger of contravening public policy and violating the employee's open-court rights.

Swiftex contends that the Act prevents nonsubscribing employers from asserting certain common-law defenses, and waiver is not listed among them. *See* Tex.Lab. Code Ann. § 406.033 (West 1996). The pertinent sections of the Act are as follows:

> (a) In an action against an employer who does not have workers' compensation insurance coverage to recover damages for personal injuries or death sustained by an employee in the course and scope of the employment, it is not a defense that:
>
> (1) the employee was guilty of contributory negligence;
>
> (2) the employee assumed the risk of injury or death; or
>
> (3) the injury or death was caused by the negligence of a fellow employee.
>
> (b) This section does not reinstate or otherwise affect the availability of defenses at common law, including the defenses described by Subsection (a).
>
> (c) The employer may defend the action on the ground that the injury was caused:
>
> (1) by an act of the employee intended to bring about the injury; or
>
> (2) while the employee was in a state of intoxication.

*Id.*

▮▮▮ The cardinal rule of statutory construction is to ascertain and follow the legislature's intent. *Citizens Bank v. First State Bank, Hearne*, 580 S.W.2d 344, 348 (Tex.1979). We ascertain that intent by initially looking at the language used in the statute. *Jones v. Del Andersen & Assocs.*, 539 S.W.2d 348, 350 (Tex.1976). The words in the statute should be interpreted according to their ordinary meaning; they are not to be interpreted in an exaggerated, forced, or strained manner. *Howell v. Mauzy*, 899 S.W.2d 690, 704 (Tex.App.—Austin 1994, writ denied). We need not analyze extrinsic evidence of legislative intent if the intent is apparent from the language of the statute. *Minton v. Frank*, 545 S.W.2d 442, 445 (Tex.1976). The goal of statutory construction is to give effect to the intent of the legislature. *Sorokolit v. Rhodes*, 889 S.W.2d 239, 241 (Tex.1994). If language in a statute is unambiguous, this Court must seek the intent of the legislature as found in the plain and common meaning of the words and terms used. *Id.*

▮▮▮ We presume that a statute passed by the legislature is constitutional. *HL Farm Corp. v. Self*, 877 S.W.2d 288, 290 (Tex.1994). If possible, we must construe statutes to avoid constitutional infirmities. *See Texas State Bd. of Barber Exam'rs v. Beaumont Barber College, Inc.*, 454 S.W.2d 729, 732 (Tex.1970). Finally, we must reject interpretations of à statute that defeat the purpose of the legislation so long as another reasonable interpretation exists. *See Citizens Bank*, 580 S.W.2d at 348.

Swiftex relies on the seventh court of appeals' reasoning that section 406.003(a) provides evidence that the legislature did not intend to deprive employers of the defense of waiver. *See Lawrence*, 16 S.W.3d at 42–43. Swiftex argues that if we hold this waiver void, we will be judicially creating a fourth prohibited defense under section 406.033(a). *See* Tex.Lab. Code Ann. § 406.033(a); *Lambert*, 20 S.W.3d at 6. "[E]ven though waiver is also a common law defense, it is not included in the list of prohibited defenses to a common law action for personal injuries brought by an employee." *Lambert*, 20 S.W.3d at 6

(citation omitted). The court stated that because holding the waiver void on public policy grounds "would constitute a judicial creation of subsection (4) ... we are constrained to refrain from invading the legislative field." *Id.*

The seventh court of appeals noted that section 406.035 provides that an agreement by an employee to waive the right to compensation is void.[2] *Lawrence*, 16 S.W.3d at 43; *see also* Tex.Lab.Code Ann. § 406.035 (West 1996). Consequently, the court reasoned, when the legislature deems certain contractual provisions void, it knows how to prohibit them. Because the language of section 406.033 does not prohibit an employer from relying on a contractual waiver, the Amarillo court declined to hold such a waiver void as against public policy. *Lawrence*, 16 S.W.3d at 43–44. With all due respect, we read the statute differently.

The supreme court explained that section 406.033(c) identifies the two defenses upon which employers *may* rely: that the employee intended to bring about the injury, or the injury occurred while the employee was intoxicated. Tex.Lab.Code Ann. § 406.033(c); *Kroger*, 23 S.W.3d at 350. Section 406.033(c) does not include a third defense, that the employee signed a contract agreeing to waive all common-law remedies and to accept benefits under a voluntary plan as a sole remedy for a job-related injury.

The term "waiver" is simply not found in section 406.033, either as a prohibited defense or as a permitted defense. We need not read it into the statute in either subsection to determine if the waiver at issue here is void because it violates public policy. The structure of section 406.033, nonetheless, provides insight to the important legislative intent of delineating "explicitly the structure of an employee's personal-injury action against his or her nonsubscribing employer." [3] *Kroger*, 23 S.W.3d at 350–51.

In *Kroger*, the supreme court determined whether section 406.033(a) prohibited the common-law defense of comparative responsibility even though it was not included in the list of prohibited defenses. The court explained that the legislature intended to encourage employers to obtain workers' compensation insurance; therefore, it enacted section 406.033 as a "penalty provision" that penalizes nonsubscribers by precluding them from asserting certain common-law defenses in their employees' personal-injury actions. *Id.* at 350.

Comparative responsibility also is not listed in section 406.033(c) as an available defense. *Id.; cf.* Tex.Lab.Code Ann. § 406.033(c). The supreme court refused to add it to subsection (c) stating, "[t]o construe section 406.033 [as adding comparative responsibility as an available defense] would be to supply by implication restrictions on an employee's rights that are not found in section 406.033's plain language." *Kroger*, 23 S.W.3d at 351. The supreme court held that an employer could not assert comparative responsibility as a defense, noting that measuring comparative responsibility necessitates a prelimi-

---

2. Section 406.035 applies only to employees of subscribing employers. *Reyes v. Storage & Processors, Inc.*, 995 S.W.2d 722, 726 (Tex. App.—San Antonio 1999, pet. denied).

3. Subsection (a) lists defenses that are unavailable to an employer; subsection (c) dictates the defenses that an employer may use; and subsection (d) provides the employee's burden of proof. Tex.Lab.Code Ann. § 406.033(a), (c), (d) (West 1996); *Kroger Co. v. Keng*, 23 S.W.3d 347, 351 (Tex.2000). The seventh court of appeals contends that the addition of subsection (b) is evidence that the

legislature revisited the issue of an employee's common-law rights, and did not expressly void or prohibit these contractual provisions. *Lawrence v. CDB Servs., Inc.*, 16 S.W.3d 35, 43–44 (Tex.App.—Amarillo 2000, pet. granted); Tex.Lab.Code Ann. § 406.033(b) (West 1996). That section, however, states that it "does not reinstate or otherwise affect the availability of defenses at common law." Tex.Lab.Code Ann. § 406.033(b). We read this to mean that the common-law defenses prohibited under subsection (a) and those allowed in subsection (c) remain unchanged.

nary finding that the plaintiff was contributorily negligent. *Id.* The court stated, "[B]y precluding contributory negligence as a defense the Legislature intended that an employee's fault would neither defeat nor diminish his or her recovery.... That is the penalty employers pay for opting not to subscribe to workers' compensation insurance." *Id.* at 352 (citation omitted).

Similarly, we cannot by implication read waiver into section 406.003 as a defense that is available to employers. Because we must not construe the statute in a way that would render it unconstitutional, we refuse to read section 406.033 as holding that every waiver associated with every private benefit plan is a defense available to employers sued for negligence. *See Citizens Bank*, 580 S.W.2d at 348. To construe the statute to permit a waiver that reduces the benefits of an employee or increases the employer's immunity would upset the delicate trade-off that has been held constitutional in the face of the open-courts challenge to the workers' compensation scheme. *See Garcia*, 893 S.W.2d at 520–21. Further, such a reading would undermine the purpose of section 406.033—to penalize employers who opt out of subscribing to workers' compensation insurance. *See Kroger*, 23 S.W.3d at 349.

▪ The public interest in protecting employees, as embodied in the Act, requires that voluntary contracts, such as the one here, be in accord with the intent of the legislature as reflected in the Act. *See Hazelwood*, 596 S.W.2d at 206. Castellow maintains that the Plan offers fewer benefits than those provided by the Act. Castellow also contends that the waiver she signed provides Swiftex more immunity from liability than that granted by the Act. We must compare the provisions of the Plan with similar provisions in the Act to determine whether the waiver violates public policy. *See Reyes*, 995 S.W.2d at 728.

The Workers' Compensation Act provides medical benefits for health care that cures or relieves the injured employee of the effects of the injury, that promotes recovery, or that enhances the ability of the employee to return to or retain employment. Tex.Lab.Code Ann. § 408.021(a) (West 1996). Under Swiftex's Plan, medical benefits terminate at the point—which the Plan refers to as "maximum rehabilitative capacity"—when Swiftex's designated physician determines the injured employee will not improve substantially as a result of additional medical treatment or physical therapy.[4]

The Act provides wage replacement during convalescence based on seventy percent of the difference between the claimant's average weekly wage and the post-injury weekly earnings until the date of maximum medical improvement.[5] Tex. Lab.Code Ann. §§ 408.102(a), .103(a)(1) (West 1996). Swiftex's Plan provides wage replacement according to the following formulas: for the first week, eighty-five percent × average hours × average wage; thereafter, seventy-five percent of the average hourly wage. The benefits terminate when the employee reaches maximum

---

**4.** The Act relies on a similar point in time, "maximum medical improvement," in determining certain benefits, but not medical benefits. Tex.Lab.Code Ann. § 401.011(30) (West Supp.2000) & § 408.101(a) (West 1996). *Cf. id.* § 408.021 (West 1996).

**5.** Temporary income benefits may also be measured as equal to seventy-five percent of the difference between the claimant's average weekly wage and the post-injury weekly earnings when the employee earns less than $8.50 an hour. Tex.Lab.Code Ann. § 408.103(a)(2)

(West 1996). "Maximum medical improvement" is defined as the earlier of:

(A) the earliest date after which, based on reasonable medical probability, further material recovery from or lasting improvement to an injury can no longer reasonably be anticipated; or

(B) the expiration of 104 weeks from the date on which income benefits begin to accrue; or

(C) the date determined [by statute for spinal surgery].

*Id.* § 401.011(30).

rehabilitative capacity, when the treating physician releases the employee to return to either full or part-time work, either regular or modified duty, or when the Plan administrator determines that the benefits should be terminated in accordance with the Plan. The Act also provides impairment income, supplemental income, and lifetime income benefits. Tex.Lab.Code Ann. §§ 408.121, .142 (West 1996) & § 408.161 (West Supp.2000). The Plan offers no comparable benefits.

■ The Act allows "recovery of exemplary damages by the surviving spouse or heirs of the body of a deceased employee whose death was caused by an intentional act or omission of the employer or by the employer's gross negligence." Tex.Lab. Code Ann. § 408.001(b) (West 1996). The Plan, conversely, prohibits death claims caused by gross negligence. The fact that this provision does not apply to Castellow is not determinative of whether the waiver is unenforceable. *See Hazelwood,* 596 S.W.2d at 206. "In considering whether a contract is contrary to public policy, the test is whether the tendency of the agreement is injurious to the public good, not whether its application in a particular case results in actual injury." *Id.* Here, we consider that the Act provides injured employees access to the courts when death results from an intentional act or gross negligence, whereas the Plan precludes all claims of gross negligence.

■ When the balance developed by the legislature is "tipped so that the employee's benefits under the statute are substantially reduced, the clear intent of the legislature is thwarted." *See id.; accord Reyes,* 995 S.W.2d at 729. As in *Reyes,* the Plan enables Swiftex to enjoy all of the advantages, and even greater advantages, of subscriber status, without providing subscriber-level benefits to employees. *See id.* A waiver whereby an employee foregoes more common-law remedies than are surrendered under the Act, in exchange for fewer benefits than are afforded by the Act, must be declared invalid as against public policy. *Id.* We sustain Castellow's single point of error.

## CONCLUSION

Because the waiver executed by Castellow is void as against public policy, the trial court erred in granting summary judgment in favor of Swiftex. We therefore reverse the trial court's judgment and remand the cause to that court for further proceedings.